DAVID B. GOLUBCHIK (SBN 185520)
dbg@lnbrb.com
KRIKOR J. MESHEFEJIAN (SBN 255030)
kjm@lnbrb.com
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

Proposed Attorneys for Chapter 11
Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>SONA, LLC,<br><br>    Debtor and Debtor in Possession. | Case No. 2:09-bk-36434-ER<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION TO (1) APPROVE COMPROMISE OF CONTROVERY; (2) APPROVE TRANSACTION OUTSIDE THE ORDINARY COURSE OF BUSINESS; AND (3) APPROVE POST-PETITION FINANCING; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVID MYERS IN SUPPORT THEREOF**<br><br>Hearing:<br>DATE:  December 1, 2009<br>TIME:   10:00 a.m.<br>PLACE: Courtroom 1568<br>          255 E. Temple Street<br>          Los Angeles, CA 90012 |

1

## **TABLE OF CONTENTS**

2

3   MEMORANDUM OF POINTS AND AUTHORITIES ..................................................8

4   I.   STATEMENT OF RELEVANT FACTS .........................................................8

5        A.   Background ..................................................................................8

6        B.   Events Leading to Bankruptcy .........................................................8

7        C.   The Adversary Proceeding Commenced by The Purported
8             Purchaser of the Debtor's Assets.........................................................9

9        D.   The Proposed Global Settlement .......................................................11

10       E.   Additional Information Regarding the Line of Credit ...........................  15

11       F.   The Global Settlement Will Allow the Debtor to Continue
12            Its Operations for the Benefit of the Estate Without the Need to
              Expend Resources Litigating the Adversary Proceeding ........................ 18
13

14  II.  DISCUSSION .....................................................................................19

15       A.   The Settlement is Fair and Is In the Best Interests of the Estate.................. 19

16            1.   The probability of success in the litigation ................................. 22
              2.   The difficulties, if any, to be encountered in the matter
17                 of collection...................................................................................23
              3.   The complexity of the litigation involved, and the expense,
18                 Inconvenience and delay necessarily attending it ........................ 24
              4.   The paramount interest of the creditors and a proper
19                 Deference to their reasonable views .......................................... 25

20       B.   The Court Should Approve Transaction Outside the Ordinary
21            Course of Business Pursuant to 11 U.S.C. § 363(b) ...............................25

22            1.   The Sona assets are essential to the Debtor's reorganization
23                 Efforts ........................................................................... 27
              2.   The Debtor will be in a position to propose a plan of
24                 Reorganization if the equipment lease and IP usage is approved....... 27

25       C.   Post-Petition Financing Pursuant to 11 U.S.C. §§ 364 and
26            503(b)(1) Should Be Approved ........................................................28

27            1.   The Debtor is unable to obtain unsecured credit .......................... 29
              2.   The terms of the proposed post-petition financing are
28                 Fair, reasonable and adequate ................................................30

1

IV.    CONCLUSION ................................................................................. 31

2

DECLARATION OF DAVID MYERS ............................................................. 32

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2

*In re Ames Department Stores, Inc.*,

3
    115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990) ........................................................ 30

4
*Anaconda-Ericsson Inc. v. Hessen (In re Teltronics Services, Inc.*),

5
    762 F.2d 185, 189 (2d Cir. 1985) ...................................................................21

*In re Antico Mfg. Co.*,

6
    31 B.R. 103 (Bankr. E.D.N.Y. 1983) ..............................................................29

7
*In re Aqua Assoc.*,

8
    123 B.R. 192, 195 (Bankr. E.D.Pa. 1991) .......................................................29

9
*Benson v. Newman*,

    409 U.S. 1039 (1972) .....................................................................................21
10

11
*In re Blair*,

    538 F.2d 849, 851 (9th Cir. 1976) ..................................................................20

12
*In re Burke Mountain Recreation, Inc.*,

13
    56 B.R. 72 (Bankr. D.Vt. 1985) .....................................................................27

14
*In re California Associated Prods.*,

15
    183 F.2d 946, 949-50 (9th Cir. 1950) .............................................................20

16
*In re Continental Air Lines, Inc.*,

    780 F.2d 1223 (5th Cir. 1986) ........................................................................27
17

18
*Cosoff v. Rodman (In re W.T. Grant Co.*),

    699 F.2d 599, 608 (2d Cir. 1983),

19
    *cert denied* 464 U.S. 822 (1983)...................................................................21

20
*In re Crouse Group, Inc.*,

    71 B.R. 544, 549 (Bankr. E.D.Pa. 1987) ........................................................29
21

22
*In re Defender Drug Stores*,

    126 B.R. 76 (Bankr. D.Ariz. 1991)

23
    *aff'd* 145 B.R. 312, 316 (Bankr. 9th Cir. 1992) ................................................29

24
*In re Ellingsen MacLean Oil Co.*,

    834 F.2d 599 (6th Cir. 1987)..........................................................................29
25

26
*In re Lee Way Holding Co.*,

    120 B.R. 881, 891 (Bankr. S.D.Ohio 1990) ....................................................21

27
*In re Lionel Corp.*,

28
    722 F.2d 1063, 1071 (2d Cir. 1983) .......................................................... 26, 27

iii

*Martin v. Kane (In re A & C Properties),*
784 F.2d 1377, 1380-81 (9th Cir. 1986),
*cert. denied,* 479 U.S. 854 (1986)........................................................................20, 21

*In re Naron & Wagner, Chartered,*
88 B.R. 85 (Bankr. D.Md. 1988) ...............................................................27

*Newman v. Stein,*
464 F.2d 689, 698 (2d Cir. 1972),
*cert denied sub nom* ...................................................................................21

*In re Photo Promotion Associates, Inc.,*
87 B.R. 8935, 839 (Bankr. S.D.N.Y. 1988)
*aff'd,* 881 F.2d 6 (2d Cir. 1989)...............................................................28

*Protective Committee for Independent Stockholders of*
*TNT Trailer Fairy, Inc.v. Anderson,*
390 U.S. 414, 425 (1968) ........................................................................20

*Richmond Leasing Co. v. Capital Bank N.A.,*
762 F.2d 1303, 1311 (5th Cir. 1985) .........................................................30

*In re Snowshoe Co., Inc.,*
789 F.2d 1085, 1089 (4th Cir. 1986) .........................................................29

*In re T.M. Sweeney & Sons LTL Services, Inc.,*
131 B.R. 984, 989 (Bankr. N.D.Ill. 1991) ...................................................28

*United States v. Alaska National Bank (In re Walsh Construction, Inc.),*
669 F.2d 1325, 1328 (9th Cir. 1982) .........................................................20

*In re Walter,*
83 B.R. 14 (9th Cir. B.A.P. 1988) .........................................................26

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson),*
839 F.2d 610, 620 (9th Cir. 1988) .........................................................20

11 U.S.C. § 101 ........................................................................ 8
11 U.S.C. § 102(1) .....................................................................26
11 U.S.C. § 362 .......................................................................22
11 U.S.C. § 363 ....................................................................... 7
11 U.S.C. § 363(b)...............................................................2, 25, 26
11 U.S.C. § 363(b)(1) ...............................................................26
11 U.S.C. § 363(c)...................................................................17
11 U.S.C. § 364.........................................................2, 7, 17, 28
11 U.S.C. § 364(b) ...................................................6, 14, 15, 28, 29
11 U.S.C. § 364 (b)(1)(A)..............................................................29

11 U.S.C. § 364(c)............................................................................17, 28
11 U.S.C. § 364(c)(3) ................................................................... 6, 14, 28
11 U.S.C. § 364(d) .........................................................................17, 28
11 U.S.C. § 364(d)(1)(A) ..................................................................... 29
11 U.S.C. § 503...................................................................................2
11 U.S.C. § 503(b)(1) .................................................................5, 13, 28
11 U.S.C. § 505(c)...............................................................................16
11 U.S.C. § 506(c) ...............................................................................18
11 U.S.C. § 544.......................................................................6, 14, 16, 18
11 U.S.C. § 545.......................................................................6, 14, 16, 18
11 U.S.C. § 546.......................................................................6, 14, 16, 18
11 U.S.C. § 547.......................................................................6, 14, 16, 18
11 U.S.C. § 548.......................................................................6, 14, 16, 18
11 U.S.C. § 549.......................................................................6, 14, 16, 18
11 U.S.C. § 550.......................................................................6, 14, 16, 18
11 U.S.C. § 552(b) ...............................................................................16
11 U.S.C. § 553(b) ...............................................................................18
11 U.S.C. § 723(a) ...............................................................................18
11 U.S.C. § 724(a) ...............................................................................18
11 U.S.C. § 1107 .............................................................................25, 26

Rule 4001, Federal Rules of Bankruptcy Procedure ...................................17
Rule 4001-2, Federal Rules of Bankruptcy Procedure ............................... 16
Rule 9019, Federal Rules of Bankruptcy Procedure ................................2, 7

Local Bankruptcy Rule 9013-1(c)(2) .....................................................7
Local Bankruptcy Rule 9013-1(h) .........................................................7

**PLEASE TAKE NOTICE** that, on December 1, 2009, at 10:00 a.m. in Courtroom 1568 of the United States Bankruptcy Court for the Central District of California, Los Angeles Division, before the Honorable Ernest M. Robles, United States Bankruptcy Judge, a hearing will be held to consider the motion ("Motion"), filed by Sona, LLC, the Chapter 11 debtor and debtor in possession herein (the "Debtor"), for (1) approval of compromise pursuant to Federal Rule of Bankruptcy Procedure 9019; (2) approval of transaction outside the ordinary course of business pursuant to 11 U.S.C. § 363(b); and (3) approval of post-petition financing pursuant to 11 U.S.C. §§ 364 and 503.

The Debtor is the owner and operator of Sona restaurant, considered one of the top restaurants in Los Angeles. In connection with its business operations, the Debtor owned all necessary restaurant equipment and supplies (the "Restaurant Assets"), as well as intellectual property (the "IP") necessary for the operation of "Sona" restaurant. Additionally, the Debtor owned a substantial wine inventory ("Wine") related to such operations. The Restaurant Assets, IP and Wine (collectively, the "Sona Assets") were pledged as collateral to secure an obligation due and owing by the Debtor to GemCap Lending I, LLC ("GemCap") in the principal amount of $1,000,000.

On September 30, 2009, the date of the instant bankruptcy filing, GemCap allegedly held a foreclosure sale of the Restaurant Assets, IP and Wine (collectively, the "Sona Assets") to GemCap Asset Holdings, LLC ("GAH"), which the Debtor disputes. Based on the fact that the Debtor disputed the validity of the alleged foreclosure sale, and to preserve the value of the business, the Debtor continued operating the restaurant, although the Wine was in possession of GemCap and not released to the Debtor.

Shortly after commencement of this case, GAH commenced an adversary proceeding against the Debtor and other third parties, bearing Adversary No. 2:09-ap-02262-ER (the

"Adversary Proceeding"), seeking a restraining order enjoining the operations of the restaurant and a writ of possession over the assets of the estate and asserting claims for damages. The Debtor opposed the motions and was joined in the oppositions by the remaining defendants. The Debtor also filed in the Debtor's main bankruptcy case an emergency motion for the use of cash collateral (the "Cash Collateral Motion"), again raising issues similar to those raised in the Adversary Proceeding.

Notwithstanding the litigation at the outset of this case, the parties commenced settlement discussions to attempt and resolve the pending disputes. Based on such discussions, a global resolution was reached which, in conjunction with the additional relief sought herein, will resolve all disputes and, importantly, allow the Debtor to operate its restaurant and reorganize its financial affairs under chapter 11.

The salient terms of the global resolution are as follows:

1. The foreclosure sale by GemCap to GAH in the amount of $800,000 will be deemed valid and enforceable, leaving a deficiency balance of approximately $300,000 against the estate (the "Deficiency");

2. The Debtor shall not object to any claim for the Deficiency and acknowledges that GAH holds valid title to the Sona Assets;

3. GAH will sell[1] the Sona Assets to Kuda Group, LLC ("Kuda");

4. GemCap will assign all of its claims with respect to the Debtor, including the Deficiency, to Kuda;

5. Kuda shall not pursue the claim for the Deficiency against the Debtor provided that all obligations as against non-Debtor guarantors and co-obligors will remain in full force and effect and, further, in the event funds are available to

3

pay unsecured creditors of Debtor, Kuda agrees defer payment of the Deficiency until all other unsecured claims have been paid in full;

6. The Adversary Proceeding will be dismissed with prejudice, by way of the stipulation attached as Exhibit "1" to the annexed Declaration of David Myers:

7. The Debtor's Cash Collateral Motion will be taken off calendar and the Debtor will enter into a subsequent cash collateral stipulation with Kuda pursuant to a lien of credit obtained from Kuda (see below).

8. Kuda and Debtor will enter into an agreement pursuant to which the Debtor will be able to continue utilizing the Sona Assets for operations as follows:

a. Upon consummation of the transfer of the Sona Assets to Kuda, Kuda will lease the Restaurant Assets to the Debtor at the rate of $5,000 per month (the "Equipment Lease"). The Debtor shall have the right to terminate the Equipment Lease at any time without penalty provided that Debtor provides 30-days written notice to Kuda of its intent to terminate the Equipment Lease. Additionally, the Equipment Lease shall terminate by its own terms, without the need for notice or court order upon the occurrence of either (i) conversion of this case to one under Chapter 7 of the Bankruptcy Code; (ii) appointment of a Chapter 11 Trustee; or (iii) dismissal of the case.

b. Upon consummation of the transfer of the Sona Assets to Kuda, Sona shall be authorized by Kuda to utilize the IP ("IP Usage") in consideration of payment of a 1% license fee to Kuda, which is based upon gross revenues of the restaurant, payable monthly.

c. Upon consummation of the transfer of the Sona Assets to Kuda, Kuda shall

---

[1] GAH and Kuda are currently negotiating an asset purchase agreement, and all parties, including the Debtor, have agreed that if such asset purchase agreement is not finalized and executed by December 1, 2009, this Motion will be

4

consign the Wine (the "Wine Consignment") to the Debtor to be utilized in the Debtor's ordinary business operations. Upon the retail sale of any Wine, the Debtor shall be required to pay to Kuda 50% of the retail sale price of such Wine.

d. To the extent that Debtor's cash flow impairs its ability to pay any of the foregoing amounts to Kuda in the ordinary course of business, Kuda agrees to accrue such obligation as a Chapter 11 administrative expense claim of the estate pursuant to 11 U.S.C. § 503(b)(1) without the need to file a motion for approval of an administrative expense claim.

e. In the event of confirmation of a plan of reorganization, Kuda shall have the right to convert the unpaid administrative obligations due and owing hereunder into equity of the Reorganized Debtor in an amount to be determined in the future, but which shall be negotiated in good faith between Kuda and Debtor.

9. Kuda will also extend a post-petition credit line to the Debtor as follows:

a. Kuda shall provide a working line of credit to the Debtor in the amount of $100,000 (the "Line of Credit");

b. The outstanding amount due and owing pursuant to the Line of Credit shall accrue interest at the rate of 8% per annum;

c. The Line of Credit shall be used solely for the post-petition obligations of the Debtor.

d. The outstanding amount under the Line of Credit shall be due and payable in full on the earlier of (the "Payment Due Date"): (i) the effective date of any confirmed plan of reorganization; (ii) appointment of Chapter 11 Trustee; (iii) conversion of this case to one under Chapter 7 of the Bankruptcy Code;

taken off-calendar.

5

1    or (iv) dismissal of the case.

2    e.  The Line of Credit shall be secured by perfected liens on all assets of the

3        Debtor (except any avoidance actions arising under Bankruptcy Code

4        Sections 544, 545, 546, 547, 548, 549, 550 or any similar provisions of the

5        Bankruptcy Code), but junior to valid and perfected security interests in

6        existence on the Petition Date (if any), pursuant to 11 U.S.C. § 364(c)(3).

7        and junior to the administrative expense claims of professionals employed

8

9        pursuant to order of the Bankruptcy Court. Additionally, the obligations due

10       and owing under the Line of Credit shall be entitled to administrative priority

11       pursuant to 11 U.S.C. § 364(b).

12    f.  In the event of confirmation of a plan of reorganization, Kuda shall have the

13       right to convert the obligations due and owing hereunder into equity of the

14

15       Reorganized Debtor in an amount to be determined in the future, but which

16       shall be negotiated in good faith between Kuda and Debtor.

17    The Debtor believes that the foregoing terms are fair and reasonable in light of the

18    circumstances of this case. While the Debtor believes that the foreclosure sale could be set

19    aside, the Debtor realizes that this is a contested matter with arguments on both sides. Without

20    resolution, litigation will be protracted and expensive for the estate. Moreover, as is the case

21    with all litigation, uncertainties exist and it is possible that a finding may be made that the

22    foreclosure sale was valid, which would result in a complete cessation of operations and loss of

23    value for all parties in interest. Finally, based on the restaurant's notoriety, the litigation has

24    resulted in negative public relations and perceptions for the Debtor, which must be resolved to

25    avoid further damage to the "Sona" name. On the other hand, the compilation of agreements

26    subject to this Motion will allow the Debtor to continue operating, thereby maximizing the

27

28

1  value of the estate for the benefit of all creditors. While the Sona Assets will no longer be

2  owned by the Debtor, the obligation due to GemCap, in an amount of approximately

3  $1,100,000, will no longer be an obligation of the estate, except to the extent of the Deficiency.

4  which Kuda has agreed to subordinate to the full payment of all other unsecured claims. The

5
6  Debtor submits that approval of the Motion is appropriate in this case.

7      **PLEASE TAKE FURTHER NOTICE** that the Motion is based upon this Notice of

8  the Motion, the attached memorandum of points and authorities, 11 U.S.C. §§ 363 and 364, and

9  Rule 9019 of the Federal Rules of Bankruptcy Procedure, the attached declaration of David

10  Myers, all pleadings and papers filed in this action, those matters as to which the Court can take

11  judicial notice and such other argument and evidence as the court may entertain.

12      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-

13
14  1(c)(2), any oppositions to the Motion must be in writing and shall be filed with the Court and

15  served upon counsel for Debtor not later than fourteen (14) days before the date designated for

16  the hearing on the Motion.

17      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-

18  1(h), any opposition not timely filed and served may be deemed by the Court to be consent to

19  the granting of the Motion.

20  Dated: November 10, 2009             LEVENE, NEALE, BENDER, RANKIN
21                                                        & BRILL, L.L.P.

22                                        By: ___/S/ David B. Golubchik_____
23                                              DAVID B. GOLUBCHIK
                                              KRIKOR J. MESHEFESHIAN
24                                              Proposed Attorneys for Debtor and
                                              Debtor in Possession
25

26

27

28

7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF RELEVANT FACTS

**A.    Background**

Sona, LLC, debtor and debtor in possession herein (the "Debtor") commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 et seq. ("Bankruptcy Code") on September 30, 2009 (the "Petition Date"). The Debtor is a California limited liability company. Its sole member is FoodArt Ventures, Inc., a California corporation ("FAVI").

The Debtor is the creation of David Myers, one of the top chefs and restaurateurs in the United States. The Debtor is the owner and operator of one of the top restaurants in Los Angeles. Its food has won national and international acclaim year after year. The Debtor employs three (3) full time persons and 17-21 part-time servers.

In connection with its business operations, the Debtor owned all necessary restaurant equipment and supplies (the "Restaurant Assets"), as well as intellectual property (the "IP") necessary for the operation of "Sona" restaurant. Additionally, the Debtor owned a substantial wine inventory ("Wine") related to such operations. The Restaurant Assets, IP and Wine (collectively, the "Sona Assets") were pledged as collateral to secure an obligation due and owing by the Debtor to GemCap Lending I, LLC ("GemCap") in the principal amount of $1,000,000.

**B.    Events Leading To Bankruptcy**

When the Debtor required operating capital, it turned to GemCap. On or about January 16, 2009, GemCap extended to the Debtor a $1,000,000 credit facility. Throughout the Loan term, the Debtor remained substantially current on all of its payments to GemCap and always

1  cured any alleged arrearages, save for its pre-petition September payment which the Debtor has

2  not made as a result of the bankruptcy.  On or about September 1, 2009, GemCap was advised

3  that one of the principals (Basil Schmid) of the Debtor's managing member was leaving to

4  Switzerland and would not be involved in the ongoing operations of the Debtor.  Based on the

5
6  foregoing and other events that GemCap asserts are events of default, on September 2, 2009,

7  GemCap declared the loan in default and accelerated the amount due.  On the same day,

8  GemCap obtained possession of the Wine, valued at approximately $1.5 million.  The Debtor

9  was thus deprived of access to the Wine, which was necessary for business operations.

10      The Debtor has had difficulty operating its restaurant successfully without access to its

11  Wine.  Subsequent to the taking of the Wine, the Debtor attempted to negotiate a resolution

12  with GemCap.  At that time, a resolution was not reached.

13
14      On September 30, 2009, GemCap purportedly held a foreclosure sale of the Sona

15  Assets.  According to GemCap, at 10:10 a.m. on September 30, 2009, GemCap Asset Holding,

16  LLC ("GAH"), an affiliate of GemCap, was the highest bidder for the Sona Assets with a bid of

17  $800,000.  This case was commenced approximately 13 minutes later, at 10:23 a.m.

18      The Debtor has disputed that a valid sale of the Sona Assets has occurred and since the

19  bankruptcy petition was filed, has investigated the circumstances of the sale to determine how

20  to recover the Sona Assets for the benefit of the Debtor's estate.  The Debtor also filed a motion

21
22  for the use of cash collateral (the "Cash Collateral Motion").  Subsequently, the Debtor and

23  GemCap entered into a stipulation regarding the use of cash collateral, whereby the Debtor was

24  allowed to continue operations and use cash collateral, with GemCap reserving its right to

25  maintain that a foreclosure of the Debtor's assets had occurred prior to the Petition Date.

26  **C.      The Adversary Proceeding Commenced By The Purported Purchaser Of The**

27  **Debtor's Assets.**

28

1    Immediately after the bankruptcy case was filed, on October 2, 2009, GAH initiated an

2    adversary proceeding against the Debtor and other parties, styled GemCap Asset Holding, LLC

3    v. Sona, LLC; FoodArt Ventures, Inc.; and David Myers, Adv. No. 2:09-adv-02262-ER, by

4    way of the "Complaint For Conversion, False Designation Of Origin" (the "Adversary

5    Proceeding"). GAH also moved for an emergency temporary restraining order and a writ of

6

7    possession (the "TRO Motion"), claiming that the sale was properly noticed and conducted,

8    which had thereby left the Debtor without the essential assets the Debtor required to continue

9    operations. GAH demanded that the Debtor cease operations and essentially "hand over the

10    keys" to GAH.

11    On October 5, 2009, the Debtor filed an opposition to the TRO Motion, disputing that a

12    sale of the Sona Assets had actually occurred, and also filed the Cash Collateral Motion. The

13

14    Debtor's position at that time was that the sale was not a valid sale for a number of reasons,

15    including, but not limited to the following points:

16    1.    The Debtor did not believe that proper notice of the sale had been provided;

17    2.    The Debtor did not believe that GAH was a valid, registered entity at the time of

18    the sale; and

19    3.    The sale was not conducted in a commercially reasonable manner.

20

21    The Debtor has analyzed the circumstances surrounding the sale and has come to the

22    following conclusions:

23    1.    The Debtor's bankruptcy case was filed after the purported sale occurred.

24    2.    The factual issue of whether the sale was properly noticed is complex and fact-

25    intensive.

26    3.    The legal issue of whether an unregistered entity may acquire assets before

27    formal registration is subject to interpretation.

28

10

4.    The factual issue of whether the sale price of the allegedly purchased assets of the Debtor was commercially reasonable will require the Debtor to show that $800,000 is not a fair foreclosure price for assets the Debtor believes to be worth in excess of $1 million.

5.    The burden of proof and persuasion with respect to the validity of the purported sale appears to be the Debtor's burden.

6.    The cost of litigating these issues, conducting further discovery, taking depositions, requesting the production of documents, and further opposing the TRO Motion would be prohibitive as the Debtor does not have adequate resources to pursue such litigation.

7.    If the Debtor is wrong about its position with respect to the purported sale, the Debtor will not have sufficient assets to conduct its business, and the Debtor's chapter 11 case will likely either have to be dismissed or converted into a chapter 7 – in either case, general unsecured creditors of the Debtor's estate will likely receive nothing.

The Debtor's goal, of course, is to reorganize its financial affairs and continue to operate its restaurant. Since the Debtor filed for bankruptcy, vendors have contacted the Debtor and expressed their hope that the Debtor continues its operations, as have customers of the Debtor. Thus, the Debtor believes that the proposed settlement of the Adversary Proceeding and resolution of the purported sale issues in the manner proposed herein is in the best interests of the estate, its creditors, and the rehabilitative goals of the Debtor.

**D.    The Proposed Global Settlement**

Notwithstanding the litigation at the outset of this case, the parties commenced settlement discussions to attempt to resolve the pending disputes. Based on such discussions, a global resolution was reached which, in conjunction with the additional relief sought herein, will resolve all disputes and, importantly, allow the Debtor to operate its restaurant and reorganize its financial affairs under chapter 11.

The salient terms of the global resolution are as follows:

1.    The foreclosure sale by GemCap to GAH in the amount of $800,000 will be deemed valid and enforceable, leaving a deficiency balance of approximately $300,000 against the estate ("Deficiency");

2.    GAH will sell[2] the Sona Assets to Kuda Group, LLC ("Kuda")[3];

3.    The Debtor shall not object to any claim for the Deficiency and acknowledges that GAH holds valid title to the Sona Assets;

4.    GemCap will assign all of its claims with respect to the Debtor, including the Deficiency, to Kuda;

5.    Kuda shall not pursue the claim for the Deficiency against the Debtor provided that all obligations as against non-Debtor guarantors and co-obligors will remain in full force and effect and, further, in the event funds are available to pay unsecured creditors of Debtor, Kuda agrees to defer payment of the Deficiency until all other unsecured claims have been paid in full;

6.    The Adversary Proceeding will be dismissed with prejudice by way of the stipulation attached as Exhibit "1" to the annexed Declaration of David Myers;

7.    The Cash Collateral Motion will be taken off calendar and the Dbetor will enter into a cash collateral stipulation with Kuda (see Line of Credit transaction discussed hereinbelow);

8.    Kuda and Debtor will enter into an agreement pursuant to which the Debtor will be able to continue utilizing the Sona Assets for operations as follows:

---

[2] GAH and Kuda are currently negotiating an asset purchase agreement, and all parties, including the Debtor, have agreed that if such asset purchase agreement is not finalized and executed by December 1, 2009, this Motion will be taken off-calendar.

[3] Kuda is primarily controlled by Walter Schild, who is the principal of the Debtor's affiliate and, therefore, an insider of the Debtor. The Debtor believes that the friendly nature of its relationship with Mr. Schild and, therefore, Kuda will facilitate the Debtor's reorganization efforts.

a. Upon consummation of the transfer of the Sona Assets to Kuda, Kuda will lease the Restaurant Assets to the Debtor at the rate of $5,000 per month (the "Equipment Lease"). The Debtor shall have the right to terminate the Equipment Lease at any time without penalty provided that Debtor provides 30-days written notice to Kuda of its intent to terminate the Equipment Lease. Additionally, the Equipment Lease shall terminate by its own terms, without the need for notice or court order upon the occurrence of either (i) conversion of this case to one under Chapter 7 of the Bankruptcy Code; (ii) appointment of a Chapter 11 Trustee; or (iii) dismissal of the case.

b. Upon consummation of the transfer of the Sona Assets to Kuda, Sona shall be authorized by Kuda to utilize the IP ("IP Usage") in consideration of payment of a 1% license fee to Kuda, which is based upon gross revenues of the restaurant, payable monthly.

c. Upon consummation of the transfer of the Sona Assets to Kuda, Kuda shall consign the Wine (the "Wine Consignment") to the Debtor to be utilized in the Debtor's ordinary business operations. Upon the retail sale of any Wine, the Debtor shall be required to pay to Kuda 50% of the retail sale price of such Wine.

d. To the extent that Debtor's cash flow impairs its ability to pay any of the foregoing amounts to Kuda in the ordinary course of business, Kuda agrees to accrue such obligation as a Chapter 11 administrative expense claim of the estate pursuant to 11 U.S.C. § 503(b)(1) without the need to file a motion for approval of an administrative expense claim.

e. In the event of confirmation of a plan of reorganization, Kuda shall have the

right to convert the unpaid administrative obligations due and owing hereunder into equity of the Reorganized Debtor in an amount to be determined in the future, but which shall be negotiated in good faith between Kuda and Debtor.

9.    Kuda will also extend a post-petition credit line to the Debtor as follows.

a.    Kuda shall provide a working line of credit to the Debtor in the amount of $100,000 (the "Line of Credit");

b.    The outstanding amount due and owing pursuant to the Line of Credit shall accrue interest at the rate of 8% per annum;

c.    The Line of Credit shall be used solely for the post-petition obligations of the Debtor.

d.    The outstanding amount under the Line of Credit shall be due and payable in full on the earlier of (the "Payment Due Date"): (i) the effective date of any confirmed plan of reorganization; (ii) appointment of Chapter 11 Trustee; (iii) conversion of this case to one under Chapter 7 of the Bankruptcy Code; or (iv) dismissal of the case.

e    The Line of Credit shall be secured by perfected liens on all assets of the Debtor (except any avoidance actions arising under Bankruptcy Code Sections 544, 545, 546, 547, 548, 549, 550 or any similar provisions of the Bankruptcy Code), but junior to valid and perfected security interests in existence on the Petition Date (if any), pursuant to 11 U.S.C. § 364(c)(3), and junior to the administrative expense claims of professionals employed pursuant to order of the Bankruptcy Court. Additionally, the obligations due and owing under the Line of Credit shall be entitled to administrative priority pursuant to 11 U.S.C. §

364(b).

f.   In the event of confirmation of a plan of reorganization, Kuda shall have the right to convert the obligations due and owing hereunder into equity of the Reorganized Debtor in an amount to be determined in the future, but which shall be negotiated in good faith between Kuda and Debtor.

The Debtor believes that the foregoing terms are fair and reasonable in light of the circumstances of this case. While the Debtor believes that the foreclosure sale could be set aside, the Debtor realizes that this is a contested matter with arguments on both sides. Without resolution, litigation will be protracted and expensive for the estate. Moreover, as is the case with all litigation, uncertainties exist and it is possible that a finding may be made that the foreclosure sale was valid, which would result in a complete cessation of operations and loss of value for all parties in interest. Finally, based on the restaurant's notoriety, the litigation has resulted in negative public relations and perceptions for the Debtor, which must be resolved to avoid further damage to the "Sona" name. On the other hand, the compilation of agreements subject to this Motion will allow the Debtor to continue operating, thereby maximizing the value of the estate for the benefit of all creditors. While the Sona Assets will no longer be owned by the Debtor, the obligation due to GemCap, in an amount of approximately $1,100,000, will no longer be an obligation of the estate, except to the extent of the Deficiency, which Kuda has agreed not to collect, intending, instead, to collect such amounts from the Guarantor(s). Debtor submits that approval of the Motion is appropriate in this case.

**E.    Additional Information Regarding the Line of Credit**

Kuda has already advanced to the Debtor $25,000 for the Debtor's operations, and seeks, by way of this Motion, and the Debtor requests that such $25,000 payment be deemed to be an advance under the proposed Line of Credit. Pursuant to the provisions of Local

15

Bankruptcy Rule 4001-2, the Debtor hereby provides the following disclosures with respect to

the terms of the Line of Credit:

| | | |
|---|---|---|
| Provisions that grant cross-collateralization protection to the prepetition secured creditors | Does not apply | |
| Provisions that bind the estate or all parties in interest with respect to the validity, perfection, or amount of the secured creditor's prepetition lien or debt or the waiver of claims against a secured creditor | Does not apply | |
| Provisions that seek to waive or limit the estate's rights under 11 U.S.C. § 505(c) | Does not apply | |
| Provisions that grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, or 549 | Does not apply | |
| Provisions that deem secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in 11 U.S.C. § 552(b) | Does not apply | |
| Provisions that provide disparate treatment for the professionals retained by a creditors' committee from that provided for the professionals retained by the debtor with respect to a professional fee carve out | Does not apply | |
| Provisions that prime any secured lien | Does not apply | |

Pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure, the Debtor hereby provides the following disclosures with respect to the DIP Loan:

| | | |
|---|---|---|
| A grant of priority or a lien on property of the estate under § 364(c) or (d) | Does apply | The Line of Credit will be secured by liens which will be junior to perfected, valid and enforceable liens existing on the petition date on all assets of the Debtor. |
| The providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim | Does not apply | |
| A determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim | Does not apply | |
| A waiver or modification of Code provisions or applicable rulings relating to the automatic stay | Does not apply | |
| A waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request to obtain authority to obtain credit under § 364 | Does not apply | |
| The establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation | Does not apply | |

| order | | |
|---|---|---|
| A waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien | Does apply | The proposed order approving the Line of Credit (Paragraphs 10 and 11) will waive the requirement of the perfection of the post-petition liens being granted to Kuda to secure the Debtor's post-petition obligations to Kuda, which the Debtor submits is a routine right granted to a post-petition lender. |
| A release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action | Does not apply | |
| The indemnity of an entity | Does not apply | |
| A release, waiver, or limitation of any right under Section 506(c) | Does not apply | |
| The granting of a lien on any claim or cause of action arising under Sections 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a) | Does not apply | |

**F.** **The Global Settlement Will Allow The Debtor To Continue Its Operations For The Benefit Of The Estate Without The Need To Expend Resources Litigating The Adversary Proceeding.**

The big picture, and overriding purpose, of this case, is to ensure that the Debtor is able to continue the operation of its world-class restaurant for the benefit of its creditors, and to eventually reorganize its financial affairs, provide distributions to general unsecured creditors which such creditors would otherwise not receive, keep its staff employed, and exit bankruptcy a financially healthier company. While conceding that the Sona Assets were validly sold to GAH is difficult for the Debtor to do, continuing to litigate the purported sale issues is a costly

18

1 and uncertain strategy for the Debtor. The Settlement, Line of Credit and Equipment Lease

2 address the Debtor's and the estate's interests and concerns in as practical, efficient and

3 favorable manner as possible. The Debtor has two options at this point in the case: either

4 litigate the foreclosure sale issues and TRO Motion at the risk of being permanently shut down,

5 or enter into the Settlement, Line of Credit and asset usage transactions and continue to be able

6 to operate the restaurant now.

7       The choice, at least for the Debtor, is an easy choice to make. The Debtor would rather

8 focus on running its business as it has before, but on terms more favorable now than before.

9 The Line of Credit and ability to continue using the Sona Assets represent a favorable situation

10 for the Debtor. The terms of both transactions are ones that the Debtor is able to satisfy, and do

11 not place the Debtor in the prohibitive situation in which it stood when it was loaned money by

12 GemCap on terms overly demanding upon the Debtor. For these reasons, and pursuant to the

13 discussion that follows, the Debtor believes that the Settlement should be approved and the

14 Debtor should be authorized to enter into the Line of Credit and Equipment Lease transactions.

15      While the Debtor believes that the approval of the transactions contemplated by this

16 Motion is proper and in the best interest of the estate, in the event that the Motion is not

17 approved, the Debtor reserves all of its rights and remedies and does not waive or concede any

18 defenses it may have as to GemCap's and GAH's actions. If the Motion it not approved, the

19 Debtor will have no choice but to litigate the pending disputes for the benefit of the estate and

20 all creditors.

21                                      **II.**

22                                 **DISCUSSION**

23 **A.    The Settlement Is Fair And Is In The Best Interests Of The Estate**.

24      The Settlement is in the best interests of the estate because it facilitates an end to costly

25 and time-consuming litigation between the Debtor and GemCap and GAH. Attached as Exhibit

26 "1" to the Declaration of David Myers is a true and complete copy of the proposed stipulation

27 resolving the Adversary Proceeding. The purpose of any compromise agreement is to allow the

28 debtor in possession and the creditors to avoid the expenses and burdens associated with

1  litigating sharply contested and uncertain claims. In re Walsh Construction, Inc., 669 F.2d

2  1325, 1328 (9th Cir. 1982) (citing In re California Associated Prods., 183 F.2d 946, 949-50 (9th

3  Cir. 1950). The law favors compromise and not litigation for its own sake. In re Blair, 538 F.2d

4  849, 851 (9th Cir. 1976).

5      The Court of Appeals for the Ninth Circuit has long recognized that "[t]he bankruptcy

6  court has great latitude in approving compromise agreements." Woodson v. Fireman's Fund

7  Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988). "The purpose of a compromise

8  agreement is to allow the [debtor in possession] and the creditors to avoid the expenses and

9  burdens associated with litigating sharply contested and dubious claims." Martin v. Kane (In

10  re A & C Properties), 784 F.2d 1377, 1380-81 (9th Cir. 1986), cert. denied 479 U.S. 854

11  (1986). Accordingly, in approving a settlement agreement, the Bankruptcy Court need not

12  conduct an exhaustive investigation of the claims sought to be compromised. See United

13  States v. Alaska National Bank (In re Walsh Constr., Inc.), 669 F.2d 1325, 1328 (9th Cir.

14  1982).

15      The Supreme Court in Protective Committee for Independent Stockholders of TNT

16  Trailer Fairy, Inc. v. Anderson, 390 U.S. 414, 425 (1968), held that a bankruptcy court, in

17  considering whether to approve a compromise, should apprise itself of all facts necessary for

18  an intelligent and objective opinion of the probabilities of ultimate success should the claim be

19  litigated. It also explained that the court should form an educated estimate of the complexity,

20  expense and likely duration of such litigation, the possibility of collection on any judgment

21  that might be obtained, and all other factors relevant to the full and fair assessment of the

22  wisdom of the proposed compromise. The Court need not, however, conduct an exhaustive

23  investigation into the validity of the claims to be compromised nor is the Court expected to

24  conduct a mini-trial on the merits. In re Walsh Construction, Inc., 669 F.2d at 1328. It is

25  sufficient that the Bankruptcy Court find that the settlement was negotiated in good faith and

26  is reasonable, fair, and equitable. See In re A & C Properties, supra, 784 F.2d at 1381.

27

28

1        The Court of Appeals for the Ninth Circuit has identified the following factors for

2  consideration in determining whether a proposed settlement agreement is reasonable, fair, and

3  equitable:

4           (a)    the probability of success in the litigation;

5           (b)    the difficulties, if any, to be encountered in the matter of collection;

6           (c)    the complexity of the litigation involved, and the expense,

7                    inconvenience, and delay necessarily attending it; and

8           (d)    the paramount interest of the creditors and a proper deference to their

9                    reasonable views in the premises.

10  In re A & C Properties, supra, 784 F.2d at 1381 (the "A & C Factors").

11        Consideration of these factors does not require the Bankruptcy Court to determine

12  whether a settlement presented is the best one that could possibly have been achieved. Rather,

13  the Bankruptcy Court need only canvass the issues to determine whether the settlement falls

14  "below the lowest point in the zone of reasonableness." Newman v. Stein, 464 F.2d 689, 698

15  (2d Cir. 1972) (emphasis added), cert. denied sub nom. Benson v. Newman, 409 U.S. 1039

16  (1972); see also Anaconda-Ericsson Inc. v. Hessen (*In re* Teltronics Services, Inc.), 762 F.2d

17  185, 189 (2d Cir. 1985); Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir.

18  1983), cert. denied 464 U.S. 822 (1983). Finally, although the Bankruptcy Court should give

19  deference to the reasonable views of creditors, "objections do not rule. It is well established

20  that compromises are favored in bankruptcy." *In re* Lee Way Holding Co., 120 B.R. 881, 891

21  (Bankr. S.D. Ohio 1990).

22        Based on an analysis of the settlement in light of the A & C factors, the Debtor

23  believes that the terms of the settlement are fair, reasonable, and in the best interests of its

24  creditors and the estate. In this case, the Settlement and related transactions (Line of Credit

25  and Equipment Lease), were negotiated at arms' length by the respective parties to settle

26  pending litigation that threatens to interfere with the Debtor's reorganization, operations and

27  any potential distribution to general unsecured creditors. Because the Debtor faces a

28  possibility of a complete shut-down of operations if GAH prevails on the TRO Motion and

1  Adversary Proceeding, resolution of such claims in a manner that allows the Debtor to
2  continue operations is clearly in the creditors' best interests.

3      1.      The probability of success in the litigation.

4          The resolution of the Adversary Proceeding for conversion and false designation of
5  origin and the attendant TRO Motion which seeks to cease the Debtor's operations altogether,
6  and the related Cash Collateral Motion, entail the determination of a number of sharply-
7  contested, factually intensive issues, including whether the sale was properly noticed and
8  commercially reasonable. The problem for the Debtor is that this case is not one where a sale
9  clearly occurred *after* a bankruptcy case was filed. If that was the case, then clearly, pursuant
10 to the automatic stay provisions of 11 U.S.C. § 362, such a post-petition sale would be void.

11         Here, however, an auction was apparently scheduled and took place prior to the
12 Debtor's filing of the bankruptcy case. The Debtor had intended to stop the foreclosure sale
13 by filing for bankruptcy. The Debtor's counsel who filed the bankruptcy petition did not have
14 electronic filing capabilities, and thus, left with the only option of manually filing the
15 bankruptcy petition, rushed to the courthouse, at 9:00 a.m. on September 30, 2009, but did not
16 officially file the bankruptcy petition until 10:23 a.m.

17         Thus, it is under these facts, and the facts outline above, that the Debtor is left with the
18 burden of arguing that the sale was not valid and is not enforceable. The Debtor would have
19 to prove that the sale was not properly noticed. The Debtor would also have to prove that the
20 terms of the sale were not reasonable in that an $800,000 foreclosure sale price for Sona
21 Assets worth in excess of $1 million, and pursuant to an approximately $1 million obligation
22 of the Debtor, is not commercially reasonable. Moreover, the Debtor would have to show that
23 there is no possible way that a corporation that had not yet registered in its state of
24 incorporation can conduct any business, or later ratify such acts taken prior to incorporation.

25         While the Debtor believes that it has sound arguments, the Debtor's concern is that
26 much of the burden of proof and persuasion, as well as the cost of litigation, would rest upon
27 the Debtor's shoulders.  Thus, there would be uncertainty with respect to the Adversary
28 proceeding and TRO Motion, and the Debtor risks losing its ability to operate if it is

1   determined that the sale was proper. The only certainty is that if the Debtor is unable to

2   prevail, its operations will cease and it will be unable to propose a plan of reorganization. The

3   case would likely be either dismissed or converted, and creditors would receive nothing on

4   account of their claims.

5   Additionally, even if the Debtor were to prevail with respect to the adversary

6   Proceeding, GemCap has advised the Debtor that GemCap would move for relief from stay to

7   recommence its foreclosure attempts of the Debtor's assets. While the Debtor does not

8   believe that GemCap would prevail in bringing such a motion, the Debtor would nevertheless

9   have to expend resources litigating that issue.[4]

10   Thus, the uncertainty attendant to the outcome of the Adversary Proceeding as well as

11   the cost, and the value of what is at stake, is simply too overwhelming for the Debtor to forego

12   this settlement opportunity under which the Debtor can continue to operate under chapter 11

13   and develop an exit strategy which would offer general unsecured creditors an outcome more

14   favorable than if: (a) either the Debtor continued to litigate with GAH and lost; or (b) the

15   Debtor continued to litigate with GAH and won, but only after incurring substantial

16   administrative costs and after detracting its focus from business operations to highly-contested

17   litigation. Under these circumstances, pursuing the litigation simply does not make sense for

18   the Debtor's estate.

19   2.   The difficulties, if any, to be encountered in the matter of collection.

20   Without the Settlement, the Debtor believes a recovery to creditors would be placed in

21   severe jeopardy. While the Debtor believes that it would be able to obtain the Sona Assets

22   confiscated by GAH, and while the Debtor is currently in possession of some of the Sona

23   Assets, the risk that the Debtor would be required to shut down if GAH prevails is significant.

24   If GAH prevails, there would be no recovery to creditors because the Debtor would not be

25   able to continue business operations. Thus the likelihood of obtaining any recovery to

26   creditors in the absence of the Settlement is a pervading concern for the Debtor - the

27   Settlement presents no collection risk for the Debtor.

28

---

[4] There is of course always a chance that GemCap does obtain relief from the automatic stay.

1       3.     The complexity of the litigation involved, and the expense, inconvenience, and

2              delay necessarily attending it.

3       In this case, the Settlement and related transactions as a whole, do far more than rise

4 above "the lowest point in the range of reasonableness." Indeed, it is eminently fair to the

5 estate and the unsecured creditors and benefits both. To date, the Debtor has already incurred

6 legal fees in connection with the litigation, and will continue to incur fees opposing an

7 aggressive and unrelenting adversary which is adamant as to its position regarding the Sona

8 Assets. The fact that GAH filed an adversary complaint and an emergency TRO Motion just

9 days after the Debtor filed for bankruptcy lends insight to the highly contested nature of the

10 potential battles between the Debtor and GAH. Additionally, the issues related to the

11 purported sale are numerous and factually intensive as well as legally complicated. Finally,

12 the Debtor's experience with GAH and GAH's representatives post-bankruptcy had initially

13 been highly adversarial and at certain times on the brink of a complete breakdown. The

14 Debtor's experience with GAH at that point suggests to the Debtor that litigation with GAH

15 will be no easy, or productive, task.

16       But putting aside what the Debtor would have to do in order to prevail, and the issues

17 the Debtor would have to address in the Adversary Proceeding, the main problem with

18 continuing litigation is that during such litigation, the Debtor will have to detract its efforts

19 from a reorganization because the Debtor's reorganization wholly depends on the Debtor's

20 ability to continue its operations. Without certainty as to whether the sale was or was not

21 valid, there is no certainty as to whether the Debtor will or will not operate in the future.

22 Thus, it would be infeasible for the Debtor to propose a plan of reorganization which would

23 provide for payment streams to creditors based upon the Debtor's business operations, and it

24 would be impossible for the Debtor to obtain any monetary contribution for reorganization

25 from any party if there is uncertainty with respect to what the Debtor does or does not own,

26 and what the Debtor can and cannot utilize to run its business. The proposed Settlement as a

27 whole represent a convenient and beneficial outcome to for this estate without the risk, cost

28 and delay associated to continuing litigation with GAH.

4.    The paramount interest of the creditors and a proper deference to their
reasonable views.

The creditors will benefit from the Settlement because the Debtor will be able to continue its operations by way of the Line of Credit, Equipment Lease, IP Usage and Wine Consignment, which would not be offered to the Debtor save for the Settlement.    The operative sale agreement between Kuda and GAH would be executed, and the Debtor and GAH would agree pursuant to a dismissal order of the Adversary Proceeding that the Disputed Sale was a valid sale.    The Debtor would continue to remain in possession of the Sona Assets which it already possesses and pursuant to the Equipment Lease IP Usage and Line of Credit would continue its business operations.    The Settlement makes this a possibility and at only a reasonable cost to the estate (since GemCap's approximately $1.1 million will no longer be an obligation of the estate), far below the expense the Debtor would incur litigating with GAH at the risk that all such litigation would produce extremely unfavorable results for the Debtor, its estate and creditors.

With an approved Settlement the Debtor will be able to present a feasible plan of reorganization that will provide value to general unsecured creditors based upon the Debtor's operations and value garnered from the Equipment Lease, IP Usage and Wine Consignment. Thus, the Settlement is entirely in the best interests of creditors and should be approved by this Court.

**B.    The Court Should Approve Transaction Outside The Ordinary Course of Business Pursuant to 11 U.S.C. § 363(b)**

Pursuant to Section 363(b), the Debtor requests authority to enter into a transaction with Kuda pursuant to which the Debtor will be able to utilize the Sona Assets for continued operations, as set forth in the Term Sheet attached as Exhibit "2" to the Declarartion of David Myers.

With certain exceptions not applicable in this case, Section 1107 states that "a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties

1  ... of a trustee...." 11 U.S.C. § 1107. Section 363(b)(1) of the Bankruptcy Code provides that a

2  trustee (or debtor in possession in this case) "after notice and a hearing, may use, sell or lease,

3  other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

4  Section 102(1) of the Bankruptcy Code defines "after notice and a hearing" as after such notice

5
6  as is appropriate in the particular circumstances, and such opportunity for hearing as is

7  appropriate in the particular circumstances.

8          In <u>In re Walter</u>, 83 B.R. 14 (9th Cir. B.A.P. 1988), the Bankruptcy Appellate Panel

9  adopted the Second Circuit's analysis for approval of transactions outside the ordinary course

10  of business:

11
            We also agree with the Second Circuit that implicit in § 363(b) is the
12          further requirement of justifying the proposed transaction. <u>In re
            Lionel Corp.</u>, 722 F.2d 1063, 1071 (2d Cir.1983). That is, for the
13          debtor-in-possession or trustee to satisfy its fiduciary duty to the
            debtor, creditors and equity holders, there must be some articulated
14          business justification for using, selling, or leasing the property
            outside the ordinary course of business.... Whether the proffered
15          business justification is sufficient depends on the case. As the
            Second Circuit held in *Lionel,* the bankruptcy judge should consider
16          all salient factors pertaining to the proceeding and, accordingly, act
17          to further the diverse interests of the debtor, creditors and equity
            holders, alike.
18

19  <u>In re Walter</u>, 83 B.R. at 19.

20          Salient factors to be considered by the court in determining whether to authorize a

21  transaction other than in the ordinary course of business include, but are not limited to: (1) the

22  proportionate value of the assets to the estate as a whole, (2) the amount of elapsed time since

23  the filing of the bankruptcy petition, (3) the likelihood of a reorganization plan being proposed

24  and confirmed in the near future, (4) the effect of the proposed disposition of the property on

25  future plans for a reorganization of the debtor, (5) the proceeds to be obtained from the

26  disposition of the property vis-a-vis any appraisals of the property, (6) which of the alternatives

27  of use, sale, or lease is entailed by the proposed transaction, and (7) whether the asset is

28

26

1    increasing or decreasing in value. In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir.1983); see
2    also In re Burke Mountain Recreation, Inc., 56 B.R. 72 (Bankr. D. Vt. 1985); In re Naron &
3    Wagner, Chartered, 88 B.R. 85 (Bankr. D. Md. 1988); In re Continental Air Lines, Inc., 780
4    F.2d 1223 (5th Cir. 1986).

5           The vast majority of reported decisions, as well as the foregoing factors, relate to sale of
6    property outside the ordinary course of business, which the Debtor does not seek in this case.
7    Based on the proposed transaction herein, the Debtor believes that all of the above-referenced
8    factors weigh in favor of the proposed transaction

9           1.      The Sona Assets Are Essential To The Debtor's Reorganization Efforts.

10          Without the Sona Assets, the Debtor would not be able to continue its business
11   operations and would have to shut down its business. If that were to occur, this case would
12   either have to be dismissed or converted into a chapter 7 proceeding. Neither of those
13   outcomes is beneficial to any party in interest in this case. The most effective and practical
14   method of being able to provide recoveries to general unsecured creditors of the Debtor's estate
15   is through the Debtor's ability to continue operating its business. The Equipment Lease, IP
16   Usage and Wine Consignment will allow the Debtor to do just that, and, with the Settlement as
17   a whole, will allow the Debtor to operate without interference and litigation by GAH.

18          2.      The Debtor Will Be In A Position to Propose a Plan of Reorganization If The
19                  Equipment Lease and IP Usage Is Approved.

20          While the Debtor is still evaluating its options with respect to the particular proposal it
21   would like to make to creditors pursuant to a plan of reorganization, any plan that the Debtor
22   proposes will likely provide that at least some aspect of recovery for creditors will be based
23   upon the Debtor's future cash flow. By continuing to operate its business by utilizing the Sona
24   Assets under the Equipment Lease, the Debtor will be able to propose a plan of reorganization
25   soon, and anticipates doing so prior to the expiration of the Debtor's exclusivity period to
26   propose a plan, which expires on or about January 28, 2010.

27          The terms of the Equipment Lease, IP Usage and Wine Consignment transaction are
28   favorable to the estate, especially in comparison to the costs that the Debtor would incur

27

1  litigating with GAH.   The facts of this case, and the Debtor's need to continue its operations
2  clearly demonstrate that the Debtor has a legitimate business purpose for entering into the
3  proposed transaction with Kuda. The Debtor's sole reason for entering into the transaction is to
4  maintain operations and provide value for its estate and the creditors herein.   The Debtor
5  submits that the approval of the transaction is necessary and appropriate in order to facilitate
6  the Debtor's reorganization efforts.

7  **C.   Post-Petition Financing Pursuant to 11 U.S.C. §§ 364 and 503(b)(1) Should Be**
8  **Approved.**

9  Pursuant to Sections 364(b) and 503(b)(1), as well as Section 364(c)(3) of the
10  Bankruptcy Code, the Debtor requests authority to secure a credit line in the amount of
11  $100,000 (of which $25,000 has already been advanced to the Debtor) from Kuda in
12  accordance with the terms and conditions set forth in the Financing Term Sheet attached as
13  Exhibit "3" to the Declaration of David Myers. The proposed order approving the Financing
14  Term Sheet is attached hereto as Exhibit "4."

15  Section 364 of the Bankruptcy Code is structured with an escalating series of
16  inducements which a debtor in possession may offer to attract credit during the post-petition
17  period. In re Photo Promotion Associates, Inc., 87 B.R. 835, 839 (Bankr. S.D.N.Y. 1988),
18  aff'd, 881 F.2d 6 (2d. Cir. 1989). Therefore, where a trustee or debtor in possession cannot
19  otherwise obtain unsecured post-petition credit, such credit may be obtained under certain
20  carefully proscribed conditions. In re T.M. Sweeney & Sons LTL Services, Inc., 131 B.R. 984,
21  989 (Bankr.N.D.Ill.1991). For example, if creditors are unwilling to extend unsecured credit to
22  a debtor in possession, further inducements are offered, with court approval after notice and a
23  hearing, including, without limitation, liens equal to or senior to existing liens on encumbered
24  property in accordance with 11 U.S.C. § 364(d). In re Photo Promotion Associates, Inc., 87
25  B.R. at 839.

26  Section 364(c) of the Bankruptcy Code also enumerates certain incentives that a court
27  may grant to post-petition lenders. The Section 364(c) list, however, is not exhaustive. Courts
28  frequently have authorized the use of inducements not specified in the statute. See, e.g., In re

28

1  Ellingsen MacLean Oil Co., 834 F.2d 599 (6th Cir. 1987) (affirming financing order which

2  prohibited any challenges to the validity of already existing liens); In re Defender Drug Stores,

3  126 B.R. 76 (Bankr. D. Ariz. 1991) (authorizing enhancement fee to post-petition lender), aff'd

4  145 B.R. 312, 316 (Bankr. 9th Cir. 1992) ("[b]ankruptcy courts . . . have regularly authorized

5  postpetition financial arrangements containing lender incentives beyond the explicit priorities

6  and liens specified in section 364"); In re Antico Mfg. Co., 31 B.R. 103 (Bankr. E.D.N.Y.

7  1983) (authorizing lien on pre-petition collateral to secure post-petition indebtedness).

8          Two factors courts consider in determining whether to authorize post-petition financing

9  which contemplates the granting of a security interest in favor of the lender are (1) whether the

10  debtor is unable to obtain unsecured credit per 11 U.S.C. § 364(b), *i.e.*, by allowing a lender

11  only an administrative claim per 11 U.S.C. § 364(b)(1)(A); and (2) whether the terms of the

12  transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower

13  and the proposed lender. In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D.Pa. 1987); see

14  also In re Aqua Assoc., 123 B.R. 192, 195 (Bankr. E.D.Pa. 1991).

15          1.      The Debtor Is Unable To Obtain Unsecured Credit.

16          Section 364(d)(1)(A) does not impose upon a debtor-in-possession the onerous duty to

17  seek credit from every possible lender before concluding that such credit is unavailable. See In

18  re Snowshoe Co., Inc., 789 F. 2d 1085, 1089 (4th Cir. 1986).   Instead, a good faith effort to

19  obtain less burdensome credit is required of the debtor.

20          Because of the uncertainty with respect to the outcome of the Adversary Proceeding,

21  and doubt as to exactly what does and does not belong to the Debtor, it would be impossible for

22  the Debtor to obtain any post-petition financing on any basis whatsoever. However, pursuant to

23  the global Settlement being proposed, financing has been made available by Kuda. The Debtor

24  does not believe that any other lender is prepared to or would provide the financing needed by

25  the Debtor on terms more favorable than those proposed by Kuda. Additionally, no other lender

26  would be able to provide the Debtor with the "package deal" being offered by Kuda, whereby

27  the Debtor can continue utilizing the Sona Assets. Understandably, Kuda has insisted that the

28  Debtor provide Kuda with a lien on substantially all assets of the estate.   Under these

29

1  circumstances, the Debtor believes that the terms of the Line of Credit are very favorable to the

2  Debtor and the estate, and essential to the Debtor's business operations and reorganization

3  efforts.

4          2.       The Terms Of The Proposed Post-Petition Financing Are Fair, Reasonable and

5                   Adequate.

6          The Debtor submits that the terms of the Line of Credit from Kuda are fair, reasonable

7  and adequate.    While in determining whether to approve such a transaction, a Court is

8  authorized to act in its informed discretion, In re Ames Department Stores, Inc., 115 B.R. 34,

9  37 (Bankr. S.D.N.Y. 1990), the Court should give broad deference to the business decision of a

10 chapter 11 debtor, particularly with respect to a debtor's business judgment regarding the need

11 for and proposed use of funds. Richmond Leasing Co. v. Capital Bank N.A., 762 F.2d 1303,

12 1311 (5th Cir. 1985).  As the court noted in Ames Dept. Stores, "the court's discretion under

13 section 364 is to be utilized on the grounds that permit the reasonable business judgment [of the

14 Debtor] to be exercised . . . ." In re Ames Dept. Stores, Inc., 115 B.R. at 40.

15         The Debtor, in the exercise of its business judgment, has concluded that borrowing this

16 money from Kuda is in the clear best interests of the Debtor's estate because without such

17 funds, the Debtor will have difficulty paying its post-petition obligations and other operating

18 costs while attempting to attract more business and pay its increased overhead expenses in the

19 upcoming busy season. If the Debtor is forced to turn down business as a result of its inability

20 to pay the expenses of conducting additional business, the Debtor's estate will be harmed.

21         Specifically, with the Line of Credit, the Debtor would be able to amply replenish its

22 inventory of food and beverages, possess cash that could be utilized for ordinary, day to day

23 business expenses, marketing and provide the required cash flow to be able to meet the

24 demands of the more busy upcoming holiday season during which the Debtor anticipates that

25 it will be requested to host holiday events and dinner receptions.  The infusion of cash will

26 permit the Debtor to operate more efficiently and generate revenue for the benefit of the estate

27 and all creditors, and be able to meet the demands of customers while attracting new ones, for

28 the benefit of the Debtor's estate.

1        The Line of Credit will allow the Debtor to sustain operations at capacity while

2  providing an appropriate cushion in a situation where the Debtor is in need of additional

3  operating capital to generate more revenues. The terms of the Line of Credit are simple, fair

4  and reasonable, and are crafted for the narrow purpose for which the Line of Credit is being

5  requested. The Line of Credit is thus a favorable financing arrangement to the Debtor which has

6  been proposed for the benefit of the Debtor's estate. For these reasons, the Court should

7  approve the Line of Credit for the Debtor.

8
## IV.

9
## CONCLUSION

10     **WHEREFORE,** the Debtor respectfully requests that this Court enter an order:

11    (a)    Approving the compromise between the Debtor and GAH resolving the

12           Adversary Proceeding and Cash Collateral Motion;

13    (b)    Approving the post-petition financing transaction proposed by the Debtor;

14    (c)    Approving the asset lease and usage transaction proposed by the Debtor; and

15    (d)    granting such other and further relief as the Court deems just and proper.

16  Dated: November 10, 2009           LEVENE, NEALE, BENDER, RANKIN
                                 & BRILL, L.L.P.

17

18                        By:   */S/ David B. Golubchik*
                             DAVID B. GOLUBCHIK

19                             KRIKOR J. MESHEFESHIAN
                             Proposed Attorneys for Debtor and

20                             Debtor in Possession

21

22

23

24

25

26

27

28

31

## DECLARATION OF DAVID MYERS

I, David Myers, hereby declare:

1.      I am the Executive Chef of Sona and created the concept for the Sona restaurant. I am also the president of FoodArt Ventures, Inc. ("FAVI") and FoodArt group, Inc. ("FAGI"). FAVI is the sole member of Sona, LLC, the debtor and debtor in possession herein (the "Debtor"). FAGI is the nonmember manager of the Debtor pursuant to a management agreement between the Debtor and FAGI. The facts contained in this Declaration are known by me personally and if called to testify, I could and would testify competently to the truth thereto. Unless indicated otherwise, all capitalized terms herein have the same meaning as that in the Motion to which this Declaration is annexed.

2.      Shortly after obtaining my culinary degree, I worked in some of the most prestigious restaurants in the world and under some of the most successful restaurateurs, including Charlie Trotter's from 1995 to 1996 in Chicago, and Les Crayeres in Reims, France. In August 1998, I was hired as the Executive Sous Chef of the Patina Group and helped in the re-launch of its brand. In 2001, I left Patina to join Raffles at L'Ermitage in BeverlyHills. There, I was the Executive Chef and conceived the concept behind their JAAN restaurants, opening such restaurants in Beverly Hills and Singapore. The JAAN restaurants were both critical and financial successes for Raffles.

3.      In 2002, I created the Sona concept. The word comes from the Latin word "sono" which means to make music and sounds and to celebrate. The concept was that my cooking is very jazz-like and artistic and celebratory. I take the freshest ingredients available in Southern California and make artistic plates based upon these fresh ingredients.

4.      Since the opening of the restaurant, we have developed a very staunch and loyal clientele. In fact, despite the Los Angeles Times reporting on the foreclosure sale of the wine

1    inventory and other assets and essentially making it sound as if we had closed, many of our

2    long-term guests phoned and came by and expressed their support for our staying open. Even

3    our vendors have rallied around us and many have pledged their commitment to work with us

4    and assist us through this time, including our landlord.

5
6    5.    The restaurant was initially opened by way of equity investments made by Otto

7    Schmid and Basil Schmid, among others. But when the Debtor required additional operating

8    capital, it turned to GemCap Lending I, LLC ("GemCap"). On or about January 16, 2009, the

9    Debtor entered into a loan agreement to provide the Debtor with a $1,000,000 at a 3% fee and

10   interest charged at 18% per annum (the "Loan").

11   6.    In connection with its business operations, the Debtor owned all necessary

12   restaurant equipment and supplies (the "Restaurant Assets"), as well as intellectual property

13   (the "IP") necessary for the operation of "Sona" restaurant. Additionally, the Debtor owned a

14
15   substantial wine inventory ("Wine") related to such operations. The Restaurant Assets, IP and

16   Wine (collectively, the "Sona Assets") were pledged as collateral to secure the Loan.

17   7.    Throughout the Loan term, the Debtor remained substantially current on all of

18   its payments to GemCap. On or about September 1, 2009, GemCap was advised that one of the

19   principals (Basil Schmid) of the Debtor's managing member was leaving to Switzerland and

20   would not be involved in the ongoing operations of the Debtor. Based on the foregoing and

21
22   other events GemCap alleged were events of default, on September 2, 2009, GemCap declared

23   the loan in default and accelerated the amount due. On the same day, GemCap obtained

24   possession of the Debtor's wine inventory which has been valued by the Debtor at

25   approximately $1.5 million, maintained in a wine storage facility near the restaurant. GemCap

26   changed the locks at the facility, and barred the Debtor's access to the facility.

27

28

33

8.    The Debtor has had difficulty operating its restaurant successfully without access to its Wine. After the inventory was obtained by GemCap, the Debtor attempted to negotiate a resolution with GemCap, initially without success.

9.    On September 30, 2009, GemCap proceeded with an auction sale (the "Disputed Sale")of the Sona Assets. A dispute has arisen as to that auction in light of the Debtor's bankruptcy filing on the same date as the auction as well as other issues related to the auction. GemCap asserts the propriety of that auction.

10.    It is my intention and desire to continue to operate the restaurant through the bankruptcy. Based upon my greater than 14-year career in high-end restaurants, I am certain that Sona can operate at a profit during the bankruptcy. We have gotten many of our costs in line and I am confident that we can meet the revenue and expenses identified in the budget submitted with the Debtor's emergency motion for the use of cash collateral. Traditionally, the holiday season, which comprises nearly the total of the last quarter of the year, is our strongest quarter from a revenue standpoint. We already have holiday parties booked and expect that if we stay open, there will be several others.

11.    The restaurant is open for dinner 5 days a week (Tuesday through Saturday). The restaurant employs 20 to 23 people at any given time, including 3 salaried persons. I am not on the payroll. We generally have approximately 80 guests from Tuesday through Thursday and 115 on Saturday and Sunday. This amount averages out to approximately 195 persons per week. The average check amount per guest is $140.

12.    Immediately after the bankruptcy case was filed, on October 2, 2009, GAH initiated an adversary proceeding against the Debtor and other parties, styled GemCap Asset Holding, LLC v. Sona, LLC; FoodArt Ventures, Inc.; and David Myers, Adv. No. 2:09-adv-02262-ER, by way of the "Complaint For Conversion, False Designation Of Origin" (the

34

"Adversary Proceeding"). GAH also moved for an emergency temporary restraining order and a writ of possession (the "TRO Motion"), claiming that the Disputed Sale was a properly noticed and conducted sale of the Sona Assets which had thereby left the Debtor without the essential assets the Debtor required to continue operations. GAH demanded that the Debtor cease operations and essentially "hand over the keys" to GAH.

13. On October 5, 2009, the Debtor filed an opposition to the TRO Motion, disputing that a sale of the Sona Assets had actually occurred, and filed its cash collateral motion.

14. If the Debtor is wrong about its position with respect to the Disputed Sale, the Debtor will not have sufficient assets to conduct its business.

15. The Debtor's goal, of course, is to reorganize its financial affairs and continue to operate its restaurant.

16. The Debtor will be able to continue its operations by way of the Line of Credit, Equipment Lease, IP Usage and Wine Consignment, which would not be offered to the Debtor save for the Settlement. The operative sale agreement between Kuda and GAH would be executed, and the Debtor and GAH would agree pursuant to a dismissal order of the Adversary Proceeding that the Disputed Sale was a valid sale. The Debtor would continue to remain in possession of the Sona Assets which it already possesses, and pursuant to the Equipment Lease IP Usage, Wine Consignment and Line of Credit, would continue its business operations. The Settlement makes this a possibility and at only a reasonable cost to the estate, far below the expense the Debtor would incur litigating with GAH at the risk that all such litigation would produce extremely unfavorable results for the Debtor, its estate and creditors.

17. With an approved Settlement, the Debtor will be able to quickly present a plan of reorganization that is intended to provide value to general unsecured creditors based upon

35

the Debtor's operations and value garnered from the Equipment Lease, IP Usage and Wine Consignment. Thus, the Settlement is entirely in the best interests of creditors and should be approved by this Court.

18.    Attached hereto as Exhibit "1" is a true and complete copy of the stipulation to resolve the Adversary Proceeding. Pursuant to the stipulation, the foreclosure sale to GAH will be deemed valid and enforceable and the Adversary Proceeding will be dismissed with prejudice, except as to one party, as more fully provided in the attached stipulation. GAH will transfer the Sona Assets to Kuda as well as any potential remaining claims that GAH may have, as part of this settlement.

19.    Attached hereto as Exhibit "2" is a true and complete copy of the term sheet for the Equipment Lease, IP Usage and Wine Consignment. The Equipment Lease, IP Usage and Wine Consignment will allow the Debtor to operate its business, and, with the Settlement as a whole, will allow the Debtor to operate without interference and litigation by GAH.

20.    While the Debtor is still evaluating its options with respect to the particular proposal it would like to make to creditors pursuant to a plan of reorganization, any plan that the Debtor proposes will likely provide that at least some aspect of recovery for creditors will be based upon the Debtor's future cash flow. By continuing to operate its business by utilizing the Sona Assets under the lease, the Debtor will be able to propose a plan of reorganization soon, and anticipates doing so prior to January 28, 2010.

21.    Attached hereto as Exhibit "3" is a true and complete copy of the Financing Term Sheet with respect to the Line of Credit and attached hereto as Exhibit "4" is a true and complete copy of the proposed order approving the Line of Credit transaction.    Under Financing Term Sheet, Kuda will provide a working line of credit to the Debtor in the amount of $100,000, at the rate of 8% per annum.

22.    The Line of Credit will allow the Debtor to sustain operations at capacity while providing an appropriate cushion in a situation where the Debtor is in need of additional operating capital to generate more revenues.  With the Line of Credit, the Debtor would be able to amply replenish its inventory of food and beverages, possess cash that could be utilized for ordinary, day to day business expenses, marketing and provide the required cash flow to be able to meet the demands of the more busy upcoming holiday season during which the Debtor anticipates that it will be requested to host holiday events and dinner receptions.  The infusion of cash will permit the Debtor to operate more efficiently and generate revenue for the benefit of the estate and all creditors, and be able to meet the demands of customers while attracting new ones, for the benefit of the Debtor's estate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on November 9th, 2009.

DAVID MYERS

37

# EXHIBIT 1

1 | STEVEN T. GUBNER - Bar No. 156593
RICHARD D. BURSTEIN - Bar No. 56661
2 | DANIEL H. GILL – Bar No. 156045
EZRA BRUTZKUS GUBNER LLP
3 | 21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
4 | Telephone: 818.827.9000
Facsimile: 818.827.9099
5 | Email:    sgubner@ebg-law.com
rburstein@ebg-law.com
6 | dgill@ebg-law.com

7 | Attorneys for Plaintiff, GemCap Asset Holding, LLC,

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **LOS ANGELES DIVISION**

11 |
In re                                      | Case No. 2:09-bk-36434-ER
12 |
SONA, LLC,                                 | Chapter 11
13 |
              Debtor.                       | Adversary Case No. 2:09-ap-02262-ER
14 |

15 | GEMCAP ASSET HOLDING, LLC, a           | **STIPULATION TO DISMSS ADVERSARY
Delaware limited liability company,         PROCEEDING AND FOR MUTUAL
16 |                                           RELEASES**
              Plaintiff,
17 |
vs.                                        | [No hearing required]
18 |
SONA, LLC, a California limited liability
19 | company, FOODART VENTURES, INC., a
California corporation, and DAVID MYERS, an
20 | individual,

21 |               Defendants.

22 |

23 |

24 | **TO THE COURT AND INTERESTED PARTIES:**

25 |     Plaintiff GemCap Asset Holding, LLC, a Delaware limited liability company ("**GAH**"),

26 | and defendants Sona, LLC, the debtor and debtor-in-possession herein ("**Debtor**"), and David

27 |

28 |

1    Myers (collectively, the Debtor and David Myers may be referenced herein as **"Defendants"**),

2    but excluding Foodart Ventures, Inc. ("FAVI"), hereby agree and stipulate as follows:

3                                    **RECITALS**

4         A.       The above-captioned bankruptcy case (**"Case"**) was commenced on September

5    30, 2009 when debtor filed its voluntary petition for relief under Chapter 11 of Title 11, United

6    States Code.

7         B.       The above-captioned adversary proceeding (**"Adversary Proceeding"**) was

8    commenced when GAH filed a complaint against Defendants (**"Complaint"**) on October 2,

9    2009.

10        C.       None of the Defendants has filed an answer to the Complaint, although Debtor

11   and David Myers have filed pleadings in connection with pending motions in the adversary

12   proceeding.  By stipulation of the parties, the time for Defendants to respond to the Complaint

13   has been continued and has not expired.

14        D.       The Debtor and certain other parties, including GAH, have agreed to settle a

15   number of disputes having arisen between and among them, including the claims asserted in the

16   Complaint commencing this Adversary Proceeding.  The Debtor is filing, or has filed, a motion

17   for Court approval of this agreement (**"Settlement Agreement"**), and a hearing on the agreement

18   is scheduled before the Court on December 1, 2009 at 10:00 a.m.  Among other things, the

19   Agreement provides that the parties to the Adversary Proceeding will stipulate to dismiss the

20   Adversary Proceeding.

21        WHEREFORE, it is hereby agreed as follows:

22                                   **AGREEMENT**

23        1.       The recitals above are hereby incorporated in this agreement.

24        2.       Contingent upon and after the Court enters an order approving the Settlement

25   Agreement, this stipulation shall be effective.

26        3.       The Complaint is dismissed with prejudice as to Debtor and David Myers only,

27   with all parties to bear their own fees and costs.

28                                      -- 2 --

1    4.    GAH shall file a Notice of Dismissal of the Complaint without prejudice as to

2    FAVI. Notwithstanding the previous sentence, no obligations created by or under that certain

3    Asset Purchase Agreement to be entered into between Plaintiff and Kuda Group, LLC, nor the

4    Deficiency claim referred to in the Settlement Agreement, nor any claims of the Debtor against

5    FAVI shall be released or waived by this Stipulation.

6    5.    The Adversary Proceeding shall be closed.

7    6.    Each of the parties to this stipulation, on behalf of itself, its predecessors,

8    successors, assigns, representatives, subsidiaries, affiliates, heirs, parents, officers, directors,

9    managers, members, agents, employees and attorneys (collectively, "**Releasors**") does hereby

10    absolutely, fully and forever release, waive, relinquish and discharge each of the other parties

11    hereto, and their respective predecessors, successors, assigns, representatives, managers,

12    subsidiaries, affiliates, parents, officers, directors, managers, members, agents, employees and

13    attorneys (collectively, "**Released Parties**"), of and from all claims, demands, causes of action,

14    obligations, contracts, agreements, debts and liabilities whatsoever, whether known or unknown,

15    suspected or unsuspected, concealed or hidden, both at law and in equity (collectively,

16    "**Claims**"), that each Releasor now has, has ever had, or may hereafter have which was or could

17    have been or could be raised in the Adversary Proceeding, provided that nothing set forth herein

18    shall be deemed a release of any kind, or waiver of any claims, as to FAVI or its members,

19    agents and representatives unless such persons (e.g., David Myers) are expressly referenced in

20    this stipulation. Notwithstanding the previous sentence, no obligations created by or under that

21    certain Asset Purchase Agreement to be entered by into among Plaintiff and Kuda Group, LLC,

22    shall be released or waived by this Stipulation.

23    7.    Each of the parties hereto acknowledges that it is aware that it is the joint

24    intention of the parties hereto that this stipulation shall be effective as a full and final accord,

25    satisfaction and settlement of and as a bar to each and every claim and cause of action which was

26    or could have been raised in the Adversary Proceeding.

27

28

-- 3 --

1      8.      In furtherance of this intention, each of the parties hereto acknowledges its

2    familiarity with Section 1542 of the Civil Code of the State of California, which provides as

3    follows:

4          "A general release does not extend to claims which the creditor does not know or

5          suspect to exist in his or her favor at the time of executing the release, which if

6          known by him or her must have materially affected his or her settlement with the

7          debtor."

8      9.      The Releasors expressly waive and relinquish any and all rights and benefits

9    which they or any of them may have or may have under Civil Code Section 1542 to the full

10   extent that they, and each of them, may lawfully waive all such rights and benefits pertaining to

11   the claims, demands and causes of action hereinabove specified. Each of the Releasors hereto

12   further acknowledges that it is aware that it or its attorneys may hereafter discover facts different

13   from or in addition to the facts of which it or its attorneys now are aware with respect to the

14   subject matter of this Agreement and that it nevertheless intends hereby fully, finally, absolutely

15   and forever to settle the matters released hereby, notwithstanding the discovery of any such

16   different or additional facts.

17     10.     Representations and Warranties. Each Releasor represents and warrants that it (i)

18   has the authority to enter into this Agreement; (ii) has read this Agreement in its entirety and

19   understands its terms and consequences, as well as the releases it contains; (iii) has been

20   represented by and has consulted with counsel of their own choice in connection with the

21   negotiation, drafting and execution of this Agreement; and (iv) is the sole owner of and has not

22   assigned, sold, transferred, hypothecated or otherwise disposed of any of the Claims released

23   hereby, and no other person or entity owns, holds or has any interest in such Claims.

24     11.     No admission. The parties hereto understand and agree that the acceptance of

25   delivery of this Agreement by Released Parties shall not be deemed or construed as an admission

26   of liability by any Released Party, and each Released Party by accepting this Agreement

27

28                                          -- 4 --

1 | expressly denies liability of any nature whatsoever arising from or related to the subject of this
2 | Agreement.

3 |     12.    Integration.  This Agreement contains the entire agreement between the parties
4 | relating to the matters contained herein, and expressly supersedes any and all previous
5 | agreements or understandings, oral or written or implied, between the parties.  This Agreement is
6 | absolute and unconditional, except as expressly provided herein.  This Agreement cannot be
7 | altered or amended except by a writing duly executed by the parties hereto.  Each party
8 | acknowledges that no other party and no agent or attorney of such party has made any promise,
9 | representation or warranty whatsoever, express or implied, not contained herein to induce the
10 | execution of this Agreement; and each party acknowledges that it has not executed this
11 | Agreement in reliance upon any promise, representation or warranty not contained herein.

12 |     13.    Successors.  This Agreement shall be binding upon, and shall inure to the benefit
13 | of, the predecessors, successors, assigns, representatives, subsidiaries, affiliates, parents,
14 | partners, officers, directors, stockholders, managers agents and employees of each of the parties
15 | hereto.

16 |     14.    Choice of Law and Forum.  This Agreement shall be construed in accordance
17 | with and governed by the laws of the State of California and/or federal bankruptcy law, as may
18 | be applicable.  All disputes hereunder shall heard by the Bankruptcy Court for the Central
19 | District of California, in the above-captioned Case.

20 |     15.    Severability.  If any provision of this Agreement or application thereof to any
21 | person or circumstance shall be invalid or unenforceable to any extent, the remainder of this
22 | Agreement and the application of such provisions to other persons or circumstances shall not be
23 | affected thereby and such provisions shall be enforced to the greatest extent permitted by law.
24 | ///
25 | ///
26 | ///
27 | ///
28 |

-- 5 --

16.     Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement shall not be effective as to any party until it has been signed by all parties hereto.

Dated: November ___, 2009          GEMCAP ASSET HOLDING, LLC


                                   By: _____
                                        David Ellis

Dated: November ___, 2009          SONA, LLC


                                   By: _____
                                        David Myers
                                        Its Authorized Agent

Dated: November ___, 2009          _____
                                        David Myers


**APPROVED AS TO FORM**:

Dated: November ___, 2009          EZRA BRUTZKUS GUBNER LLP


                                   By: _____
                                        Richard D. Burstein
                                        Counsel for GemCap Asset Holding, LLC

Dated: November ___, 2009          YOUNESI & YOSS LLP


                                   By: _____
                                        Jan Yoss
                                        Counsel for David Myers

-- 6 --

Dated: November ___, 2009

LEVENE, NEALE, BENDER, RANKIN
& BRILL L.L.P.

By: _____
David B., Golubchik
Krikor Meshefejian
Counsel for Debtor in Possession

166633

-- 7 --

| In re: SONA, LLC, | Chapter 11 |
| Debtor | CASE NUMBER  2:09-bk-36434-ER |
| GEMCAP ASSET HOLDING, LLC, etc., vs.  SONA, LLC, etc. et. al. | ADV CASE NO.: 2:09-ap-02262-ER |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 21650 Oxnard Street, Suite 500 Woodland Hills, CA 91367.

A true and correct copy of the foregoing document described as **STIPULATION TO DIMSS ADVERSARY PROCEEDING AND FOR MUTUAL RELEASES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On November ___, 2009, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) listed below.

- David B. Golubchik    dbg@lnbrb.com
- Krikor J. Meshefejian    kjm@lnbrb.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

**II.    SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served): On November ___, 2009, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on October 5, 2009, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

**Counsel for Debtor** – Chet Olsen, colsen@robthomlaw.com
**Counsel for Defendants** –  Jan Yoss, jyoss@younesi.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct

| November ___, 2009 | NIKOLA A. FIELDS | /s/ Nikola A. Fields |
| Date | Full Name | Signature |

-8-

| In re: SONA, LLC, | Chapter 11 |
| Debtor | CASE NUMBER 2:09-bk-36434-ER |
| GEMCAP ASSET HOLDING, LLC, etc., vs. SONA, LLC, etc. et. al. | ADV CASE NO.: 2:09-ap-02262-ER |

II.    **SERVED FIRST CLASS MAIL**

Honorable Ernest M. Robles
United States Bankruptcy Court
255 E. Temple Street, Room 1568
Los Angeles, CA 90012

United States Trustee
Office of the United States Trustee
725 South Figueroa, #2600
Los Angeles, CA 90017

Proposed Counsel for Debtor
David B. Golubchik
Levene, Neale, Bender, Rankin & Brill LLP
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067

Counsel for Debtor
Chet Olsen
Robertson + Thommarson
1880 Century Park East, Suite 618
Los Angeles, CA 90067

Counsel for Defendants
Jan A. Yoss
Younesi & Yoss LLP
11355 W. Olympic Blvd., Suite 200
Los Angeles, CA 90064

-9-

# EXHIBIT 2

DAVID B. GOLUBCHIK (SBN 185520)
dbg@lnbrb.com
KRIKOR J. MESHEFEJIAN (SBN 255030)
kjm@lnbrb.com
LEVENE. NEALE. BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244

Proposed Attorneys for Chapter 11
Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:09-bk-36434-ER |
| SONA. LLC, | Chapter 11 |
|   Debtor and Debtor in Possession. | **TERM SHEET FOR USE OF RESTAURANT EQUIPMENT, IP AND WINE** |

1    This Term Sheet for Use of Restaurant Assets ("Term Sheet") is entered into by and

2  between Sona, LLC, debtor and debtor in possession in the above-referenced Chapter 11

3  bankruptcy case ("Debtor") and Kuda Group, LLC ("Kuda"), with respect to the following:

4

5

6                                    **RECITALS**

7    1.    The Debtor commenced its Chapter 11 bankruptcy case by filing a voluntary

8  petition under Chapter 11 of the Bankruptcy Code on September 30, 2009 ("Petition Date").

9  The Debtor is operating its business and managing its financial affairs as a debtor in possession

10  pursuant to 11 U.S.C. §§ 1107 and 1108.

11    2.    The Debtor operates Sona restaurant in Los Angeles, California. Prior to the

12  Petition Date, the Debtor owned all necessary restaurant equipment and supplies (the

13  "Restaurant Assets"), as well as intellectual property (the "IP") necessary for operation of Sona

14
restaurant. Additionally, the Debtor owned a substantial wine inventory ("Wine") related to

15

16  such operations. The Restaurant Assets, IP and Wine were pledged as collateral to secure an

17  obligation due and owing by the Debtor to GemCap Lending I, LLC ("GemCap").

18    3.    On September 30, 2009, GemCap allegedly held a foreclosure sale of the

19  Restaurant Assets, IP and Wine (collectively, the "Sona Assets"), which the Debtor disputes.

20
    4.    The Debtor understands that a settlement has been reached, subject to approval

21
of the Bankruptcy Court, pursuant to which the foreclosure sale of the Sona Assets will be

22
deemed valid, but that the Sona Assets will be transferred to Kuda who will then allow the Sona

23

24  Assets to be utilized by the Debtor for the benefit of the restaurant, this estate and all creditors,

25  pursuant to the terms and conditions of this Term Sheet.

26

27

28

2

**AGREEMENT**

A.    Upon consummation of the transfer of the Sona Assets to Kuda, Kuda will lease the Restaurant Assets to the Debtor at the rate of $5,000 per month (the "Equipment Lease"). The Debtor shall have the right to terminate the Equipment Lease at any time without penalty provided that Debtor provides 30-days written notice to Kuda of its intent to terminate the Equipment Lease. Additionally, the Equipment Lease shall terminate by its own terms, without the need for notice or Court order upon the occurrence of either (i) conversion of this case to one under Chapter 7 of the Bankruptcy Code; (ii) appointment of a Chapter 11 Trustee; or (iii) dismissal of the case.

B.    Upon consummation of the transfer of the Sona Assets to Kuda, Sona shall be authorized to utilize the IP in consideration of payment of 1% license fee, which is based upon gross revenues of the restaurant, payable monthly.

C.    Upon consummation of the transfer of the Sona Assets to Kuda, Kuda shall consign the Wine to the Debtor to be utilized in the Debtor's ordinary business operations. Upon the retail sale of any Wine, the Debtor shall be required to pay to Kuda 50% of the retail sale price of such Wine.

D.    To the extent that Debtor's cash flow impairs its ability to pay the foregoing amounts to due Kuda in the ordinary course of business. Kuda agrees to accrue such obligation as a Chapter 11 administrative expense claim of the estate pursuant to 11 U.S.C. § 503(b)(1) without the need to file a motion for approval of an administrative expense claim.

E.    In the event of confirmation of a plan of reorganization, Kuda shall have the right to convert the obligations due and owing hereunder into equity of the Reorganized Debtor in an amount to be determined in the future, but which shall be negotiated in good faith between Kuda and Debtor.

1      F.     Nothing contained in this Term Sheet and the order approving this Agreement

2 shall be deemed or construed to waive, reduce, or otherwise diminish the rights and claims of

3 Kuda against the Debtor or other third party.

4      G.     This Term Sheet is subject to approval of the Bankruptcy Court. The Debtor

5 shall promptly submit this Term Sheet and use best efforts to obtain approval thereof.

6

7 Dated: November 6, 2009          SONA, LLC, Debtor and Debtor in Possession

8

9                         By:_____

10                               DAVID MYERS
                              Its Authorized Agent

11 Dated: November 7, 2009          KUDA GROUP, LLC

12

13                         By:_____

14                            WALTER SCHILD
                         Its Managing Member

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 3

1  DAVID B. GOLUBCHIK (SBN 185520)
   dbg@lnbrb.com
2  KRIKOR J. MESHEFEJIAN (SBN 255030)
   kjm@lnbrb.com
3  LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
   10250 Constellation Blvd., Suite 1700
4  Los Angeles, California 90067
   Telephone: (310) 229-1234
5  Facsimile: (310) 229-1244

6
   Proposed Attorneys for Chapter 11
7  Debtor and Debtor in Possession

8

9              **UNITED STATES BANKRUPTCY COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11                 **LOS ANGELES DIVISION**

12

13  In re                        )   Case No. 2:09-bk-36434-ER
                                  )
14  SONA, LLC,                    )   Chapter 11
                                  )
15       Debtor and Debtor in Possession.   )   **TERM SHEET FOR POST-PETITION**
                                  )   **FINANCING**
16                                )
                                  )
17                                )
                                  )
18                                )
                                  )
19                                )
                                  )
20                                )
                                  )
21                                )
                                  )
22                                )
                                  )
23                                )
                                  )
24  _____  )

25

26

27

28

This Term Sheet for Post-Petition Financing ("Term Sheet") is entered into by and between Sona, LLC, debtor and debtor in possession in the above-referenced Chapter 11 bankruptcy case ("Debtor") and Kuda Group, LLC ("Lender"), with respect to the following:

**RECITALS**

1.      The Debtor commenced its Chapter 11 bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on September 30, 2009.  The Debtor is operating its business and managing its financial affairs as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2.      The Debtor has advised Lender that, notwithstanding its use of cash collateral, the Debtor requires post-petition financing to allow the Debtor to meet certain expenses relating to the operation of its business.

3.      Lender has agreed to provide post-petition financing to the Debtor on a secured and administrative basis in accordance with the terms and conditions set forth below.

**AGREEMENT**

A.      Lender shall provide a working line of credit to the Debtor in the amount of $100.000 (the "Line of Credit");

B.      The outstanding amount due and owing pursuant to the Line of Credit shall accrue interest at the rate of 8% per annum;

C.      The Line of Credit shall be used solely for the post-petition obligations of the Debtor.

D.      The outstanding amount under the Line of Credit shall be due and payable in full on the earlier of (the "Payment Due Date"): (i) the effective date of any confirmed plan of

1  reorganization; (ii) appointment of Chapter 11 Trustee; (iii) conversion of this case to one under

2  Chapter 7 of the Bankruptcy Code; or (iv) dismissal of the case. Notwithstanding the Payment

3  Due Date, the parties may extend the term of the Line of Credit by in writing executed by all

4  parties hereto without further order of the Court or a hearing.

5
6      E.      The Line of Credit shall be secured by perfected liens on all assets of the Debtor

7  (except any avoidance actions arising under Bankruptcy Code Sections 544, 545, 546, 547, 548,

8  549, 550 or any similar provisions of the Bankruptcy Code), but junior to valid and perfected

9  security interests in existence on the Petition Date, pursuant to 11 U.S.C. § 364(c)(3), and

10  junior to the administrative expense claims of professionals employed pursuant to order of the

11  Bankruptcy Court. Additionally, the obligations due and owing under the Line of Credit shall

12  be entitled to administrative priority pursuant to 11 U.S.C. § 364(b).

13
14      F.      In the event of confirmation of a plan of reorganization, Lender shall have the

15  right to convert the obligations due and owing hereunder into equity of the Reorganized Debtor

16  in an amount to be determined in the future, but which shall be negotiated in good faith

17  between Lender and Debtor.

18      G.      During the term that amount is due and owing under the Line of Credit, the

19  Debtor shall deliver to Lender all monthly operating reports and interim operating statements as

20  and when filed by the Debtor with the Office of the United States Trustee.

21
22      H.      Nothing contained in this Term Sheet and the order approving the proposed

23  financing shall be deemed or construed to waive, reduce, or otherwise diminish the rights and

24  claims of Lender against the Debtor or other third party.

25  ///

26  ///

27  ///

28

3

1      I.      This Term Sheet is subject to approval of the Bankruptcy Court.  The Debtor

2   shall promptly submit this Term Sheet and use best efforts to obtain approval thereof.

3   Dated: November 6, 2009                        SONA, LLC, Debtor and Debtor in Possession

4

5                                                  By:_____

6                                                       DAVID MYERS
                                                        Its Authorized Agent
7
    Dated: November 7, 2009                        KUDA GROUP, LLC, Lender
8
9                                                  By:_____

10                                                      WALTER SCHILD
                                                        Its Managing Member
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28


                                                   4

# EXHIBIT 4

1   DAVID B. GOLUBCHIK (SBN 185520)
    dbg@lnbrb.com
2   KRIKOR J. MESHEFEJIAN (SBN 255030)
    kjm@lnbrb.com
3   LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
4   10250 Constellation Blvd., Suite 1700
    Los Angeles, California 90067
5   Telephone: (310) 229-1234
    Facsimile: (310) 229-1244
6
    Proposed Attorneys for Chapter 11
7   Debtor and Debtor in Possession

8

9                    UNITED STATES BANKRUPTCY COURT

10                    CENTRAL DISTRICT OF CALIFORNIA

11                         LOS ANGELES DIVISION

12

13   In re                          )   Case No. 2:09-bk-36434-ER
                                     )
14   SONA, LLC,                      )   Chapter 11
                                     )
15        Debtor and Debtor in Possession.   )   **ORDER APPROVING TERM SHEET**
                                     )   **FOR POST-PETITION FINANCING**
16                                   )
                                     )
17                                   )
                                     )
18                                   )
                                     )
19                                   )
                                     )
20                                   )
                                     )
21                                   )
                                     )
22                                   )
                                     )
23                                   )
                                     )
24   _____  )

25

26

27

28

On December 1, 2009, this Court held a hearing on the motion (the "Motion") for authorization to obtain a post-petition line of credit ("the "Line of Credit") (among other relief requested addressed by separate court orders) filed by Sona, LLC, Chapter 11 debtor and debtor in possession pursuant to the Term Sheet attached as Exhibit "3" to the Declaration of David Myers filed in support of the Motion. Based upon this Court's consideration of the Motion and all evidence submitted in support thereof,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    This Court has core jurisdiction over this case, the Motion, and the parties and property affected under this Order pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 11 U.S.C. §§ 1408 and 1409;

2.    Under the circumstances, the notice given by the Debtor of the Motion and the hearing on the Motion constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 2002, 4001(b) and 9014 and all applicable Local Bankruptcy Rules;

3.    Approval of the Line of Credit is crucial to the Debtor's reorganization efforts;

4.    Financing solely in the form of unsecured credit allowable under section 502(b)(1) of the Bankruptcy Code, or solely in exchange for special administrative priority under section 364(c)(1) of the Bankruptcy Code, is unavailable to the Debtor;

5.    The terms of the Line of Credit, as reflected in the Motion and the Term Sheet are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with the Debtor's fiduciary duties and are supported by reasonably equivalent value and fair consideration;

6.    The Line of Credit has been negotiated in good faith and at arm's length between the Debtor and Kuda Group, LLC ("Kuda"), and all of the Debtor's obligations and indebtedness arising under, in respect of or in connection with the Line of Credit shall be

1  deemed to have been extended by Kuda in good faith, as that term is used in section 364(e) of

2  the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of

3  the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the

4  Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or

5  modified, on appeal or otherwise;

6

7      7.      The Debtor is hereby authorized to enter into the Line of Credit transaction in

8  accordance with this Order and the Term Sheet;

9      8.      In furtherance of the foregoing and without further approval of this Court, the

10  Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments

11  and documents (including, without limitation, the execution or recordation of security

12  agreements, mortgages and financing statements), and to pay all fees, that may be reasonably

13  required or necessary for the Debtor's performance of the Line of Credit;

14

15      9.      The Line of Credit constitutes a valid and binding obligation of the Debtor.

16  enforceable in accordance with the terms of this Order and the Term Sheet.  No obligation.

17  payment, transfer or grant of security under this Order shall be stayed, restrained, voidable, or

18  recoverable under the Bankruptcy Code or under any applicable law, or subject to any defense.

19  reduction, setoff or counterclaim;

20

21      10.     Kuda is hereby authorized, but not required, to file or record financing

22  statements, mortgages, notices of lien or similar instruments in any jurisdiction or take any

23  other action in order to validate and perfect the liens and security interests granted to Kuda

24  hereunder.  Whether Kuda shall, in its sole discretion, choose to file such financing statements.

25  mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens

26  and security interests granted to them hereunder, such liens and security interests shall be

27

28

3

deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Order;

11.    A certified copy of this Order may, in the discretion of Kuda, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording;

12.    Kuda shall provide a working line of credit to the Debtor in the total amount of $100,000, $25,000 of which has already been advanced to the Debtor, and which advance is hereby approved as an advance pursuant to the Line of Credit transaction;

13.    The outstanding amount due and owing pursuant to the Line of Credit shall accrue interest at the rate of 8% per annum;

14.    The Line of Credit shall be used solely for the post-petition obligations of the Debtor.

15.    The outstanding amount under the Line of Credit shall be due and payable in full on the earlier of (the "Payment Due Date"): (i) the effective date of any confirmed plan of reorganization; (ii) appointment of Chapter 11 Trustee; (iii) conversion of this case to one under Chapter 7 of the Bankruptcy Code; or (iv) dismissal of the case. Notwithstanding the Payment Due Date, the parties may extend the term of the Line of Credit by in writing executed by all parties hereto without further order of the Court or a hearing;

16.    The Line of Credit shall be secured by perfected liens on all assets of the Debtor (except any avoidance actions arising under Bankruptcy Code Sections 544, 545, 546, 547, 548, 549, 550 or any similar provisions of the Bankruptcy Code), but junior to valid and perfected security interests in existence on the Petition Date, pursuant to 11 U.S.C. § 364(c)(3), and junior to the administrative expense claims of professionals employed pursuant to order of the

4

1   Bankruptcy Court. Additionally, the obligations due and owing under the Line of Credit shall

2   be entitled to administrative priority pursuant to 11 U.S.C. § 364(b).

3       17.     In the event of confirmation of a plan of reorganization, Kuda shall have the

4   right to convert the obligations due and owing hereunder into equity of the Reorganized Debtor

5   in an amount to be determined in the future, but which shall be negotiated in good faith

6   between Kuda and Debtor.

7

8       18.     During the term that amount is due and owing under the Line of Credit, the

9   Debtor shall deliver to Kuda all monthly operating reports and interim operating statements as

10  and when filed by the Debtor with the Office of the United States Trustee.

11      19.     Nothing contained in this Order or the Term Sheet shall be deemed or construed

12  to waive, reduce, or otherwise diminish the rights and claims of Kuda against the Debtor or

13  other third party.

14

15                                          ###

16

17

18

19

20

21

22

23

24

25

26

27

28

                                             5

1

2

3

| In re:<br>SONA, LLC,<br>                                    Debtor(s). | CHAPTER 11<br>CASE NUMBER 2:09-36434-ER |
|---|---|

4

### PROOF OF SERVICE OF DOCUMENT

5

6

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067

7

8

9

The foregoing document described **NOTICE OF MOTION AND MOTION TO (1) APPROVE COMPROMISE OF CONTROVERSY; (2) APPROVE TRANSACTION OUTSIDE THE ORDINARY COURSE OF BUSINESS; AND (3) APPROVE POST-PETITION FINANCING; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVID MYERS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

10

11

12

13

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 10, 2009** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

14

15

16

17

- Sandor T Boxer    tedb@tedboxer.com
- Richard Burstein    rburstein@ebg-law.com, ecf@ebg-law.com
- Daniel H Gill    ecf@ebg-law.com, dgill@ebg-law.com
- David B Golubchik    dbg@lnbrb.com
- Dare Law    dare.law@usdoj.gov
- Krikor J Meshefejian    kjm@lnbrb.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

18

19

20

21

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **November 10, 2009** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

22

23

### *All creditors and interested parties:*
### *See attached*

24

25

26

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on November 10, 2009 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

27

28

1

1 | **VIA ATTORNEY SERVICE**
Hon. Ernest Robles
2 | United States Bankruptcy Court, Central District of California
255 E. Temple Street, Ctrm 1568
3 | Los Angeles, CA  90012

4 | I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.

5 |

| November 10, 2009 | Marguerite Hardin | /s/ Marguerite Hardin |
|---|---|---|
| 6 | Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for
7 |                                                    the Central District of California.

*January 2009*                                                          **F 9013-3.1**
8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

In re Sona, LLC.
Case No. 2:09-bk-36434

**RSN**

Office of the U.S. Trustee
725 S. Figueroa Street, Ste. 2600
Los Angeles, CA  90067

Steven L. Hogan
Neeru Jindal
Lurie, Zepeda, Schmalz & Hogan
9107 Wilshire Blvd., Ste. 800
Beverly Hills, CA 90210

Agent for Service of Process for
Foodart Ventures, Inc.
David J. Berardo
1901 Ave of the Stars, Ste. 931
Los Angeles, CA 90067

Counsel for GemCap Lending I, LLC
Steven T. Gubner
Ezra Brutzkus Gubner LLP
21650 Oxnard Street, Suite 500
Woodland Hills, California  91367

Foodart Ventures, Inc.
410 N. La Cienega Blvd.
Ste. 201
Los Angeles, CA 90048

Sona, LLC
401 N. La Cienega Blvd.
Los Angeles, CA 90048

**MML**
**UPDATED 11/10/2009**
**THRU CLAIM NO. 16**

U.S. Trustee
Ernst & Young Plaza
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

Air Wave Tecnologies, Inc.
6011 Reseda Blvd.
Tarzana, CA 91356

Airwave Technologies, Inc.
6011 Reseda Blvd.
Tarzana, CA 91356

Aller Clean
P.O. Box 4316
Chatsworth, CA 91311

Allied Waste Services
PO Box 78241
Phoenix, A  85062-8241

Allied Waste Services
PO Box 78241
Phoenix, AZ 85062

Architectural Digest
PO Box 37639
Boone, IA 50037-0639

Aspen Publishers
4829 Innovation Way
Chicago, IL 60682-0048

Atherton Wine Imports
P.O. Box 2305
Menlo Park, CA 94026

Atlas Industrial Cleaning Supplies
4511 New York Ave
2nd Floor
Union City, NJ 07087

Bon Appetit
PO Box 37613
Boone, IA 50037-4613

Brogan Cellars
3232B Dry Creek Rd.
Healdsburg, CA 95448

California Choice
PO Box 7088
Orange, CA 92863-7088

California Family Farms
30941 Agoura Road #314
Westlake Villiage, CA 91361

Cellar Masters
2088 Anchor Court #A
Newbury Park, CA 91320

Chefs Warehouse
PO Box 601154
Pasadena, CA 91189-1154

Chem Mark
PO Box 721
Garden Grove,, CA 92842-0721

Chem Mark
PO Box 721
Garden Grove, CA 92842-0721

CIT Technology Fin Scrv, Inc
P.O. Box 100706
Pasadena, CA 91189-0706

CIT Technology Financial Services, Inc
PO Box 100706
Pasadena, CA 91189-0706

Comme Ci Bakery
4051 Glencoe Avenue
Marina Del Ray, CA 90292

Cooking Light
PO Box 62319
Tampa, FL 33662-3198

Cornerstone Commercial Equipment Repair
425 E. Arrow Highway #376
Glendora, CA 91740

Dahlia Design
4701 W. Jefferson Blvd.
Ste#3
Los Angeles, CA 90016

Danko Foods Inc.
P.O. Box 7013
Laguna Niguel, CA 92607

Diversified Luxury Marketing
137 N Larchment Blvd #489
Los Angeles, CA 90004

Dominique De Rouen
511 Altair Place
Venice, CA 90291

Duckhorn Wine Co.
1000 Lodi Lane St.
Helena, CA 94574

Ecolab
P.O. Box 100512
Pasadena, CA 91189-0512

Ecolab
P.O. Box 6007
Grand Forks, ND 58206-6007

Ecolab Pest Elimination
P.O. Box 6007
Grand Forks, ND 58206

Electronic Transaction Supplies Inc
1858 Rochelle Ave
Capitol Heights, MD 20743

Elysian Field Farms LLC
844 Craynes Fun Road
Wayneeburg, PA 15370

Epicure Imports, Inc
C/O: Accounting Dept.
PO Box 225
Santa Clara, CA 95052-0225

Eversoft, Inc.
707 W 16th Street
Long Beach, CA 90813

Flores Grease Company
P.O. Box 5371
Sherman Oaks, CA 91423

Food Connect
544 Stanford Ave
Los Angeles, CA 90013

FoodArt Group, Inc.
410 N. La Cienega Blvd.
Suite 201
Los Angeles, CA 90048

Foodart Ventures, Inc.
410 N. La Cienega Blvd.
Ste 201
Los Angeles, CA 90048

Four Seasons Dry Cleaners & Laundry
8042 Santa Monica Blvd.
West Hollywood, CA 90046

Franchise Tax Board
Attention: Bankruptcy
P.O. Box 2952
Sacramento, CA 95812-2952

Frank-Lin
P.O. Box 60048
Los Angeles, CA 90060-0048

GemCap Lending I, LLC
1901 Avenue of the Stars
2nd Floor
Los Angeles, CA 90067

Glick, Glick & Lewis
2630 S. Beverly Drive
Los Angeles, CA 90034

~~Goldberg and Solovoy foods~~
~~P.O. Box 60107~~
~~Los Angeles, CA 90060~~
**Address change per claim filed; see below**

Golden Eagle Insurance Co
2730 Gateway Oaks Dr
Suite 100
Sacramento, CA 95833

Gourmet
P.O. Box 37668
Boone, IA 50037-0667

GQ
P.O. Box 37673
Boone, IA 50037-4673

Heintz Wines / Dutch Bill Creek Winery
PO Box 238
Occidental, CA 95465

Honig Vineyard & Winery
PO Box 406
Rutherford, CA 94573-0408

Hope and Grace
6540 Washington St
Yountville, CA 94599

Hug Cellars
2323 Turly Ct.
Ste. 120D
Paso Robles, CA 93446

Huseh Vineyards
PO Box 189
Talmage, CA 95481

Igneous Wines, LLC
PO Box 10098
Napa, CA 94581

Impact Production
Dean Di Mascio
1901 Avenue of the Stars
Los Angeles, CA 90067

Intelligentsia Roasting Works
1850 West Fulton St
Chicago, IL 60612

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

International Marine Products
PO Box 511283
Los Angeles, CA 90051-7838

ennings, Stein & Co.
2100 Wilshire Blvd., Suite 400
.os Angeles, CA 90025

K & K International, Inc.
3820 Del Amo Blvd., #344
Torrance, CA 90503

Kalin Cellars
51 Galli Drive
Suite F & G
Novato, CA 94949

King Valet Parking Inc
PO Box 545
San Gabriel, CA 91778

King Valet Parking, Inc.
PO Box 545
San Gabriel, CA 91778

Krupp Brothers
3265 Soda Canyon Road
Napa, CA 94558

L.A. County Treasurer Tax Collector
PO Box 54978
Los Angeles, CA 90054-0978

Le Sanctuaire
17831 Sky Park Circle
Suite B
Irvine, CA 92614

Lewis Cellars
4101 Big Ranch Rd
Napa, CA 94558

Mao Foods Inc.
P.O. Box 21333
Los Angeles, CA 90021

Mendez Cleaning
1631 7th Ave.
Los Angeles, CA 90019

Mendez Cleaning
1631 7th Avenue
Los Angeles, CA 90019

Metropolitan Home
PO Box 51890
Boulder, CO 80322-1890

Metrowest Security
12326 Califa St.
Valley Village, CA 91607

Metrowest Security Systems
12326 Califa St.
N. Hollywood, CA 91607

MHW, LTD./Scanfinest
272 Plandome Road
Manhasset, NY 11030

Michael Morris
460 Loring Avenue
Los Angeles, CA 90024

Micros Systems, Inc.
Attn: Romina P Diaz
15302 Pipeline Lane
Huntington Beach, CA 92649

Millbrook Venison, Inc.
499 Verbank Road
Millbrook, NY 12545

Milton Road Trading Company LLC
C/O: Cameron Hobel
4209 Van Buren Place
Culver City, CA 90232

Monterey Bay Wine Company
27 Palma Avenue
La Selva Beach, CA 95076-1729

Morlet Family Vineyards
PO Box 3457
Napa, CA 94558

Morris, Michael
c/o Steven L. Hogan
9107 Wilshire Blvd. Suite 800
Beverly Hills, CA 90210

Mulholland Lock & Key
12602 Ventura Blvd
Studio City, CA 91604

Mutual Trading Co., Inc.
431 Crocker Street
Los Angeles, CA 90013

Neal Family Vineyards
716 Liparita Rd.
Angwin, CA 94508

Newport Meat Company
P.O. Box 19726
Irvine, CA 92623-9726

Newsweek
PO Box 5574
Harlan, IA 51593

Once Wines, LLC
C/O Reich & Assocates
1330 Pearl Street #205
Napa, CA 94559

Open Table, Inc.
PO Box 49322
San Jose, CA 95161

Opentable, Inc.
499 Market Street
4th Floor
San Francisco, CA 94103

Parr Selection
PO Box 10217
Napa, CA 94581

Paul M. Young Fine Wines
P.O. Box 1095
S. Pasadena, CA 91031-1095

Personnel Concepts
Post Office Box 9003
San Dimas, CA 91773

Pitney Bowes
PO BOX 856042
Louisville, KY 0285-6042,

Pitney Bowes Global Financial Services
PO Box 856460
Louisville, KY 40285-6460

PlayNetwork, Inc
CH 17114
Palatine, IL 60055-7114

PlayNetwork, Inc.
Dept CH 17114
Palatine, IL 60055

POS Supplies
201 S. Bicayne Dr
28th Fl
Miami, FL 33131

Pride Mountain Vineyards, LLC
4026 Spring Mtn. Road
St Helena, CA 94574

R. Paul Corti
PO Box 2603
Santa Barbara, CA 93120

R. W. Smith & Co.
P.O. Box 51847
Los Angeles, CA 90051-6147

Real Soda in Real Bottles LTD
PO Box 3731
Palos Verdes, CA 90274

Regal Wine Company
PO Box 60000
San Francisco, CA 94160-2956

Rene Fuentes
6517 Ira Ave.
Bell Gardens, CA 90201

~~Republic Master Chefs~~
~~P.O. Box 21918~~
~~Los Angeles, CA 90021~~
**Address change per claim filed; see below**

Restaurant News
P.O. Box 5038
Brentwood, TN 37024

Rios Wine Co.
3970 Peterson Drive
Calistoga,, CA 94515

Ruston Family Vineyards
2798 Spring Street
St. Helena, CA 94574-9696

Santa Monica Seafood
18531 S. Broadwick Street
Rancho Dominguez, CA 90220

SeafoodS.com, Inc
13310 South Ridge Drive
Suite B
Charlotte, NC 28273

Shane Wine Cellars
PO Box 3457
Napa, CA 94558

Sherwin Family Vineyards
4060 Spring Mountain Road
St. Helena, CA 94574

Shiverick-Jones Wine
1104 Adams Street
Suite 103
St. Helena, CA 94574

Speneer Roloson
176 Main Street #D
St. Helena, CA 94574

State Board of Equalization
POB 942879
Sacramento, CA 94279

Superior Anhausner Foods
Suite 140
555 Marin Street
Thousand Oaks, CA 91360

Surfas Restaurant Supply Inc.
3975 Landmark Street
Culver City, CA 90232

`& R Carpet Cleaners
400 S. Denker Avenue
Los Angeles, CA 90047

Tankless Hot Water Solutions
David Mallek
103 Skemp Ave.
Morgantown,, WV 26505

The Aniata Cheese Company
2332 La Mirada Drive
Ste 1000
Vista, CA 92801

The Cheese Store
119 N. Beverly Drive
Beverly Hills, CA 90210

The Henry Wine Group
P.O. Box 513827
Los Angeles, CA 90051-3827

The Morlet Selection, Inc.
818 Chiles Avenue
St. Helena, CA 94574

The Sorting Table, LLC
PO Box 225
Santa Clara, CA 95052-0225

The Wall Street Journal
PO Box 7030
Chicoppee, MA 01021-7030

Timeless Palates Wine LLC
P.O. Box 2900
Palos Verdes Peninsular, CA 90274

Tru Wines
12814 Morrison Street
Valley Village, CA 91607

Truffle Brothers
PO Box 5732
Beverly Hills, CA 90209

United Debit Supplies
305 Madison Avenue #449
New York, N 10165

Veritas Imports
9460 Wilshire Blvd.
Penthouse
Beverly Hills, CA 90212

Vogue
PO Box 37717
Boone, IA 50037-4717

Wine Warehouse
P.O. Box 910900
Los Angeles, CA 90091

Winewise/The Vienna Wine Co
5655 College Avenue
Oakland, CA 94618

Worldwide Produce
1661 Mc Garry Street
Los Angeles, CA 90021

Young's Market Company
P.O. Box 30145
Los Angeles, CA 90030-0145

Zee Medical, Inc.
PO Box 781525
Indianapolis, IN 46278-8525

Sysco/Superior Anhauser
c/o Lisa E. Spiwak
Spiwak & Iezza LLP
555 Marin St., Ste. 140
Thousand Oaks, CA 91360

Republic Master Chefs Linen
1664 W Washington Blvd.
Los Angeles, CA 90007

Goldberg and Solovy Food, Inc.
5925 S. Alcoa Ave
Vernon, CA 90058